234 P.3d 195 (2010)
STATE of Washington, Respondent,
v.
Bertha Iola BASHAW, Petitioner.
No. 81633-6.
Supreme Court of Washington, En Banc.
Argued September 17, 2009.
Decided July 1, 2010.
*197 David N. Gasch, Gasch Law Office, Spokane, WA, for Petitioner.
Shadan Kapri, Stevens County Prosecutor's Office, Colville, WA, for Respondent.
OWENS, J.
¶ 1 Bertha Bashaw was convicted of three counts of delivery of a controlled substance. Because the jury determined that each offense occurred within 1,000 feet of a school bus route stop, her maximum sentence was doubled by statute. Bashaw argues that distance measurements of a mechanical device were improperly admitted because the State failed to demonstrate that the device functioned reliably. Bashaw further contends that the jury instructions incorrectly required unanimity for a finding that her actions did not take place within 1,000 feet of the school bus route stop. We agree with both of Bashaw's arguments, though we find the improper admission of the results harmless with respect to two of the sentence enhancements. Because the instructional error was not harmless, however, we reverse all three sentence enhancements and remand the case to the trial court for further proceedings consistent with this opinion.

*198 FACTS
¶ 2 In July 2007, the State charged Bashaw with three counts of delivery of a controlled substance based on three separate sales to a police informant. The State also sought a sentence enhancement, pursuant to RCW 69.50.435(1)(c), based on its allegation that each sale took place within 1,000 feet of a school bus route stop. That enhancement allows for imprisonment of up to twice the period otherwise authorized. Count I was alleged to have occurred on May 11, 2006, some distance south of the former Vaagen Mill's parking lot. Counts II and III were alleged to have occurred on May 23 and May 31, 2006, respectively, in the parking lot of the former mill.
¶ 3 At trial, witness testimony established the locations of the school bus route stops and the drug transactions. Dan Chaplik, superintendent of the Republic School District, testified to the locations of two school bus route stops in the area. One was in the "main driveway" of the old mill site, which was located in the parking lot, while the other was across the street and slightly to the south of the parking lot. 1 Transcript of Trial (TR) at 53, 56. Detective Jan Lewis testified that he returned to the locations of the transactions and measured the distance from each location to the nearest school bus route stop. All three drug transactions took place in the vicinity of the same two school bus route stops. To measure the distances, Detective Lewis used what he described as "[o]ne of those rolling wheel measurers you can zero out and roll along ahead of you and it counts out feet." 2 TR at 176. Detective Lewis further testified that he borrowed the particular device from the Republic Police Department and that he had not used it before, though he had used similar devices. Such devices, according to Detective Lewis, are commonly used by law enforcement. After Detective Lewis pressed a button to zero out the numbers, he measured the distance from each transaction location to the school bus route stop.[1] At trial, Bashaw objected to the admission of the results of the measuring device based on a lack of foundation. The trial judge overruled the objection, and Detective Lewis testified that, based on his measurements, the distance from the location of the first sale to the school bus route stop was 924 feet and the distances from the locations of the second and third transactions to the school bus route stop were each 100 to 150 feet. This was the only testimony directly addressing the distance between the transactions and the school bus route stop.
¶ 4 The transcript also reveals additional testimony about the relevant locations from which distance might be inferred. Detective Lewis estimated that the distance from the parking lot entrance to the end of the former mill's parking lot was no more than 150 feet. Additionally, four other witnesses, including the confidential informant and three other law enforcement personnel, testified to the locations of the drug transactions and the distance from the parking lot to the location of the transaction alleged in count I. As to this distance, Detective Donald Redfield estimated the distance to be one-tenth of a mile (528 feet) while Detectives Steve Brown and Armondo Moralez, as well as the confidential informant, estimated the distance to be one-quarter of a mile (1,320 feet).
¶ 15 Because the State sought a sentence enhancement, the jury was given a special verdict form for each charge. The form asked the jury to make a special finding of whether each charged delivery took place within 1,000 feet of a school bus route stop. In the jury instruction explaining the special verdict forms, jurors were instructed: "Since this is a criminal case, all twelve of you must agree on the answer to the special verdict." Clerk's Papers at 95. On appeal, Bashaw challenges this instruction as contrary to precedent from this court.
¶ 16 The jury found Bashaw guilty of all three counts of delivery of a controlled substance and found that each had taken place within 1,000 feet of a school bus route stop. *199 The latter finding increased Bashaw's maximum sentence from 24 months to 48 months. The trial judge sentenced Bashaw to 36 months' imprisonment. Bashaw appealed the sentence but not the underlying conviction. The Court of Appeals affirmed the sentence, and Bashaw filed a petition for review with this court, which we granted. State v. Bashaw, 144 Wash.App. 196, 182 P.3d 451, review granted, 165 Wash.2d 1002, 198 P.3d 512 (2008).

ISSUES
¶ 7 1. Did the trial court abuse its discretion by admitting testimony about the results of a measuring device without any showing of reliability?
¶ 8 2. Did the trial court correctly instruct the jury that its special finding had to be unanimous?

STANDARD OF REVIEW
¶ 9 This court reviews challenged jury instructions de novo. State v. Bennett, 161 Wash.2d 303, 307, 165 P.3d 1241 (2007). We review the admission of evidence for abuse of discretion. City of Auburn v. Hedlund, 165 Wash.2d 645, 654, 201 P.3d 315 (2009). "Abuse of discretion exists `[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons.'" State v. Magers, 164 Wash.2d 174, 181, 189 P.3d 126 (2008) (alteration in original) (quoting State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995)).

ANALYSIS

I. The Trial Court Abused Its Discretion by Admitting Testimony about the Results of a Measuring Device without Any Showing of Reliability
¶ 10 The first issue in this case concerns the showing of reliability necessary for a trial court to admit testimony about the results of a measuring device. In accordance with analogous precedent, we hold that admission of results from a distance measuring device requires a showing that the particular device was functioning properly and produced accurate results. Because the State produced no evidence that the distance measuring device here produced accurate results, its admission was error and an abuse of discretion. That error, however, was harmless as to counts II and III but not as to count I. Accordingly, we vacate the sentence enhancement with respect to count I on this basis.

A. Evidence Must Be Authenticated Prior to Admission
¶ 11 It is fundamental that evidence must be authenticated before it is admitted. See ER 901(a). Authentication requires that the proponent produce proof "sufficient to support a finding that the matter in question is what its proponent claims." Id. The party offering the evidence must make a prima facie showing consisting of proof that is sufficient "to permit a reasonable juror to find in favor of authenticity or identification." State v. Payne, 117 Wash.App. 99, 106, 69 P.3d 889 (2003); see also Judicial Council Cmt. 901, cited in 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 901.1, at 283 n. 3 (5th ed.2007).
¶ 12 Conceptually, authentication is a process of establishing conditional relevance. See Judicial Council Cmt. 901, cited in 5C TEGLAND, supra, § 901.1, at 283 n. 3; see also ROBERT H. ARONSON, THE LAW OF EVIDENCE IN WASHINGTON § 901.05(1), at 901-12 (4th ed. 2008) ("Unless evidence is in fact what it purports to be, it is not relevant"). As observed in Washington Practice, "a photograph might be relevant, but only if it accurately depicts the subject"; "[an audio] recording might be relevant, but only if the sounds were recorded faithfully and the voices are accurately identified." 5C Tegland, supra, § 901.1, at 283. Likewise, a distance measurement may be relevant, but only if it is accurately measured.
¶ 13 In a line of cases analogous to the present one, the courts of this state have held that, under ER 901, speed measuring devices, such as radar devices, must be authenticated in order for their results to be admissible. See City of Bellevue v. Mociulski, 51 Wash.App. 855, 859-60, 756 P.2d 1320 (1988); see also City of Bellevue v. Hellenthal, 144 Wash.2d 425, 431-32, 28 P.3d 744 (2001) (citing Mociulski, 51 Wash.App. at *200 860-61, 756 P.2d 1320, with approval); City of Bellevue v. Lightfoot, 75 Wash.App. 214, 221, 877 P.2d 247 (1994) ("police traffic radar results are not admissible unless the particular radar device used is shown to be reliable"); City of Seattle v. Peterson, 39 Wash. App. 524, 527, 693 P.2d 757 (1985) (holding that evidence of a machine's reliability is a prerequisite to admission of the machine's results). Authentication of such devices requires a showing that the particular unit "was functioning properly and produced accurate results" at the time it was employed. Lightfoot, 75 Wash.App. at 221, 877 P.2d 247.[2]
¶ 14 We agree with the formulation of the Court of Appeals, as expressed in the speed measuring device line of cases, regarding the authentication required prior to admission of measurements made by mechanical devices.[3] The rules of evidence, analogous case law, and common sense all dictate that before the State introduces evidence that will result in a mandatory penalty enhancement, the State must show that the evidence it relies upon is accurate. Simply put, results of a mechanical device are not relevant, and therefore are inadmissible, until the party offering the results makes a prima facie showing that the device was functioning properly and produced accurate results. This is consistent with the rationale underlying the requirement of authentication. See 5C TEGLAND, supra, § 901.1, at 283. As such, we hold that the principle articulated in the context of speed measuring devices also applies to distance measuring devices: a showing that the device is functioning properly and producing accurate results is, under ER 901(a), a prerequisite to admission of the results.
¶ 15 It is true, of course, that electronic instruments differ from standard rolling wheel measuring devices in complexity. That difference, however, is properly addressed through what prima facie showing is required rather than whether a prima facie showing is required.[4] In the present case, the State failed to make a prima facie showing that the rolling wheel measuring device produced accurate results. Though we know that the device displayed numbers and that it "click[ed] off feet and inches" while Detective Lewis pushed it, no testimony or evidence even suggested that those numbers were accurate. 2 TR at 181. No comparison of results generated by the device to a known distance was made nor was there any evidence that it had ever been inspected or calibrated. The trial court abused its discretion by admitting the results of the rolling wheel measuring device with no showing whatsoever that those results were accurate.

B. Improper Admission of Evidence Was Harmless as to Counts II and III but Not as to Count I
¶ 16 The improper admission of evidence to support a criminal conviction may be harmless error. State v. Flores, 164 Wash.2d 1, 18, 186 P.3d 1038 (2008). An evidentiary error is not harmless "if, `within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" State v. Neal, 144 Wash.2d 600, 611, 30 P.3d 1255 (2001) (quoting State v. Smith, 106 Wash.2d 772, 780, 725 P.2d 951 (1986)). The record allows us to conclude that the improper admission of the results of the rolling wheel measuring device would not have materially affected the jury's special verdicts with respect to counts II and III. The outcome of the special verdict with respect to count I, however, might well have *201 been different had the court excluded the results.
¶ 17 Apart from the measurements made by the rolling wheel measuring device, testimony at trial also addressed the relevant locations and distances between the drug transactions and a school bus route stop. Superintendent Chaplik testified, and, based on the jury's verdicts, it must have believed, that the school bus stopped in "the driveway area of the Vaagen's Mill site," also referred to as the parking lot. 1 TR at 53. Numerous witnesses, including law enforcement officers and the confidential informant, testified that the transactions that were the basis for counts II and III took place in the parking lot. Id. at 110, 136; 3 TR at 275-77, 284-86, 322, 344-45, 358-60; 4 TR at 400, 405. Again, to reach its conclusions, the jury must necessarily have found the testimony about these locations credible. Detective Lewis estimated that the parking lot, in which the bus stopped and the transactions occurred, is no more than 150 feet long. 2 TR at 183. In the presence of such extensive testimony, much of which this jury would necessarily have found credible to reach its verdict, we conclude that there is no reasonable probability that this jury, as instructed, would have concluded that the special verdicts relating to counts II and III did not take place within 1,000 feet of a school bus route stop if the results of the rolling wheel measuring device had been excluded.
¶ 18 As to count I, there is a reasonable possibility that the jury would have reached a different conclusion on the special verdict if the improperly admitted results had been excluded. After meeting at the parking lot of the mill, Bashaw and the confidential informant traveled some distance south to conduct the transaction. One detective estimated the distance was one-tenth of a mile, or 528 feet, from the parking lot entrance, 3 TR at 275, while two other detectives and the confidential informant estimated the distance was one-quarter of a mile, or 1,320 feet, id. at 314, 339; 4 TR at 391. Thus, the testimony was conflicting but weighed in favor of finding that the distance was over 1,000 feet from the parking lot. Though an aerial photograph of the area was entered into evidence, it contained no scale or other method of accurately determining distance. The photograph does not establish that the transaction occurred within 1,000 feet of a school bus route stop. As to the special verdict on count I, then, there is at least a reasonable probability that excluding the results of the rolling wheel measuring device would have materially affected the outcome. As such, the improper admission of the results of the rolling wheel measuring device was not harmless and the special verdict with respect to count I must be vacated.

II. The Trial Court Incorrectly Instructed the Jury That Its Special Finding Had To Be Unanimous.
¶ 19 The jury instruction issue in this case is a narrow one: when a jury has unanimously found a defendant guilty of a substantive crime and proceeds to make an additional finding that would increase the defendant's sentence beyond the maximum penalty allowed by the guidelines, must the jury's answer be unanimous in order to be final? We answered this question in State v. Goldberg, 149 Wash.2d 888, 72 P.3d 1083 (2003), and the answer is no. A nonunanimous jury decision on such a special finding is a final determination that the State has not proved that finding beyond a reasonable doubt.[5]
¶ 20 In Goldberg, the defendant was charged with first degree murder, pursuant to RCW 9A.32.030, with an aggravating circumstance enumerated in RCW 10.95.020. 149 Wash.2d at 893, 72 P.3d 1083. The finding of an aggravating circumstance would have increased the maximum penalty to "life imprisonment without possibility of release or parole." RCW 10.95.030(1). The jury in Goldberg initially returned a verdict finding the defendant guilty of first degree murder but answered "no" on the special verdict form asking whether the aggravating circumstance was present. 149 Wash.2d at 891, 72 P.3d 1083. The judge polled the jury and *202 found that one juror had voted "no" on the aggravating factor.[6]Id. The presiding juror informed the judge that there was no reasonable probability of the jury reaching a unanimous agreement within a reasonable time. Id. Despite that, the judge ordered the jury to continue deliberations the next day and the jury subsequently returned a unanimous finding that the State had proved the aggravating factor. Id. at 891-92, 72 P.3d 1083.
¶ 21 In resolving the appeal in Goldberg, we rejected the parties' framing of the issue as one of jury coercion. Id. at 893, 72 P.3d 1083. Instead, the issue we addressed was "whether ... unanimity is required" for a special finding increasing the maximum penalty and we held that "it is not." Id. We went on to hold that the "jury's [nonunanimous] judgment should have been accepted" and that it was error to order continued deliberations. Id. at 894, 72 P.3d 1083. We concluded by stating, "[i]n sum, special verdicts do not need to be unanimous in order to be final." Id. at 895, 72 P.3d 1083. The rule from Goldberg, then, is that a unanimous jury decision is not required to find that the State has failed to prove the presence of a special finding increasing the defendant's maximum allowable sentence. A nonunanimous jury decision is a final determination that the State has not proved the special finding beyond a reasonable doubt.[7]
¶ 22 The rule we adopted in Goldberg and reaffirm today serves several important policies. First, we have previously noted that "[a] second trial exacts a heavy toll on both society and defendants by helping to drain state treasuries, crowding court dockets, and delaying other cases while also jeopardizing the interests of defendants due to the emotional and financial strain of successive defenses." State v. Labanowski, 117 Wash.2d 405, 420, 816 P.2d 26 (1991). The costs and burdens of a new trial, even if limited to the determination of a special finding, are substantial. We have also recognized a defendant's "`valued right' to have the charges resolved by a particular tribunal." State v. Wright, 165 Wash.2d 783, 792-93, 203 P.3d 1027 (2009) (internal quotation marks omitted) (quoting Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)). Retrial of a defendant implicates core concerns of judicial economy and finality. Where, as here, a defendant is already subject to a penalty for the underlying substantive offense, the prospect of an additional penalty is strongly outweighed by the countervailing policies of judicial economy and finality.
¶ 23 Applying the Goldberg rule to the present case, the jury instruction stating that all 12 jurors must agree on an answer to the special verdict was an incorrect statement of the law. Though unanimity is required to find the presence of a special finding increasing the maximum penalty, see Goldberg, 149 Wash.2d at 893, 72 P.3d 1083, it is not required to find the absence of such a special finding. The jury instruction here stated that unanimity was required for either determination. That was error.
¶ 24 In order to hold that a jury instruction error was harmless, "we must `conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" State v. Brown, 147 Wash.2d 330, 341, 58 P.3d 889 (2002) (quoting Neder v. United States, 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). The State argues, and the Court of Appeals agreed, that any error in the instruction was harmless because the trial court polled the jury and the jurors affirmed the verdict, demonstrating it was unanimous. This argument misses the point. The error here was the procedure by which unanimity would be inappropriately achieved. In Goldberg, the error reversed by this court was the trial court's instruction to a nonunanimous jury to reach unanimity. 149 Wash.2d at 893, 72 *203 P.3d 1083. The error here is identical except for the fact that that direction to reach unanimity was given preemptively.
¶ 25 The result of the flawed deliberative process tells us little about what result the jury would have reached had it been given a correct instruction. Goldberg is illustrative. There, the jury initially answered "no" to the special verdict, based on a lack of unanimity, until told it must reach a unanimous verdict, at which point it answered "yes." Id. at 891-93, 72 P.3d 1083. Given different instructions, the jury returned different verdicts. We can only speculate as to why this might be so. For instance, when unanimity is required, jurors with reservations might not hold to their positions or may not raise additional questions that would lead to a different result. We cannot say with any confidence what might have occurred had the jury been properly instructed. We therefore cannot conclude beyond a reasonable doubt that the jury instruction error was harmless. As such, we vacate the remaining sentence enhancements and remand for further proceedings consistent with this opinion.

CONCLUSION
¶ 26 We reach two conclusions in this case. First, testimony about the results of a mechanical device is admissible only if there is some showing that the particular measuring device was functioning properly and producing accurate results. Second, a nonunanimous special finding by a jury is a final decision by the jury that the State has not proved its case beyond a reasonable doubt. Because there was no showing that the distance measuring device employed here produced accurate results and that error was not harmless as to the special verdict on count I, and because the trial court erred in instructing the jury on the unanimity requirements for special findings, we reverse all three sentence enhancements and remand the case to the trial court for further proceedings consistent with this opinion.
WE CONCUR: CHARLES W. JOHNSON, RICHARD B. SANDERS, TOM CHAMBERS, MARY E. FAIRHURST, and DEBRA L. STEPHENS, Justices.
MADSEN, C.J. (dissenting).
¶ 27 Although I have concerns about the majority's comparison of a measuring wheel to radar devices, my greater concern is with the majority's treatment of the jury instructions and its conclusion that instructional error regarding jury unanimity was not harmless.
¶ 28 First, with regard to the majority's conclusion that a measuring wheel is analogous to radar devices and thus similar authentication requirements apply before evidence of the wheels' measurements may be admitted, the analogy is inapposite. Radar measuring devices are complex machines whose operation is not within the common understanding of jurors. Further, where complicated radar devices used to measure speed and breath testing equipment used to measure blood or breath alcohol levels are concerned, state statutes and regulations set forth the standards and requirements for admission of test results. RCW 46.61.506; CrRLJ 6.13(c), (d); IRLJ 6.6; Title 448 WAC. In contrast, there is no protocol for calibrating a measuring wheel and no rule or statute dictating testing prior to use.
¶ 29 This is logical, since, unlike a radar device or breath testing equipment, a measuring wheel does not rely for its result on complex scientific theory or complicated mechanical operation; a measuring wheel is no more than a round ruler. Its operation is within the common understanding of jurors. The accuracy of the device's result is a question of weight to be given the evidence and not admissibility. I disagree with the majority's conclusion that a measuring wheel is subject to the same authentication requirements as radar devices.
¶ 30 My greater concern, however, is that the majority concludes that error in instructing the jury on the unanimity requirements for special findings on whether Bertha Bashaw distributed a controlled substance within 1,000 feet of a school bus route stop was not harmless error. I disagree.
¶ 31 This case is unlike State v. Goldberg, 149 Wash.2d 888, 72 P.3d 1083 (2003), upon which the majority bases this conclusion. In *204 Goldberg, an aggravated murder prosecution, the jury initially returned a verdict and answered "no" on the special verdict form for the aggravating factor that the State alleged. Id. at 891, 894, 72 P.3d 1083. The jury was polled. One juror raised a hand to confirm a "no" vote, although evidently three jurors actually voted "no." As the court explained in Goldberg, the judge then proceeded as if the jury was deadlocked and instructed the jury to continue deliberating to see if unanimity could be reached. Id.
¶ 32 At the time the jury returned its original verdict, it was close to 5:00 p.m. and the jury had been deliberating since 11:00 a.m. that day. Id. at 891, 72 P.3d 1083. The jury was instructed to resume deliberations the next day. Id. The next day, after deliberating three more hours, the jury returned a unanimous finding that the State had proved the aggravating factor. Id. at 891-92, 72 P.3d 1083.
¶ 33 This court concluded in Goldberg that unanimity is not required for a special verdict and there was no error in the jury's original verdict. Id. at 894, 72 P.3d 1083. The court further held that it was error for the trial court to order continued deliberations. Id.
¶ 34 In the present case, however, the jury returned one verdict and there is nothing to indicate there was any error in the jury's original and only verdict. Unlike in Goldberg, the jury was not advised, after returning a verdict, that it must continue to deliberate. Unlike in Goldberg, the polling of the jury showed no disagreement on the question whether the state had proved that delivery of controlled substances occurred within 1,000 feet of a school bus route stop.
¶ 35 Moreover, the jury here was advised as to what it must find to return a finding that delivery took place within 1,000 feet of a school bus route stop. Jury instruction 19 instructed the jury, as to each count of delivery of a controlled substance, that if it found the defendant guilty, it would then complete a special verdict form. This instruction also correctly told the jury with respect to each count:
If you find from the evidence that the state has proved beyond a reasonable doubt that the defendant delivered the controlled substance to a person within one thousand feet of a school bus stop route stop designated by a school district, it will be your duty to answer the special verdict form [A][B][C] "yes."
Clerk's Papers at 95-96 (Jury Instruction 19). A jury is presumed to follow the jury instructions. State v. Gamble, 168 Wash.2d 161, 178, 225 P.3d 973 (2010); State v. Kirkman, 159 Wash.2d 918, 937, 155 P.3d 125 (2007). Nothing indicates that the jury did not do so.
¶ 36 The majority suggests that a different outcome might have resulted under proper instructions. The majority is therefore either suggesting that the jury might not have followed the jury instructions when it returned its unanimous findingswhich would be antithetical to the presumption that juries follow the instructions they are given, or the majority is suggesting that the jury was coerced or influenced by the unanimity instruction into reaching a conclusion it would not otherwise have reachedwhich is equally unacceptable given that unanimity is required for guilty verdicts. We certainly do not infer from a unanimous verdict on guilt that the jury was coerced or improperly influenced by an instruction on unanimity. Why does the majority doubt the unanimous verdict here?
¶ 37 Goldberg is not the same as this case, contrary to the majority's belief. Because unanimity is not required, the original verdict form in Goldberg stated the jury's true, legally permissible finding. The judge rejected this true initial verdict on impermissible grounds and instead accepted a legally erroneous verdict, which was erroneous because it was arrived at only after the judge informed the jury that its initial verdict was not acceptable. We know all of this because we know what the original verdict form said; we know that the results of the jury polling confirmed the original verdict; we know what then occurred, including the judge's instruction ordering the jury to return the next day and continue deliberation with the goal to achieve unanimity; and we know that *205 the second verdict was unanimous and contrary to the first verdict.
¶ 38 None of these circumstances exist in the present case. All that exists is the majority's speculation that a proper instruction might have resulted in a different verdict. That speculation does not accord with the jury instructions given and the presumption that the jury would not have returned its unanimous verdict unless each of the jurors was persuaded that the State proved that the offenses occurred within 1,000 feet of a school bus route stop, as instructed.
¶ 39 For the reasons stated, I dissent. As I have noted, I am most concerned about the majority's ill-considered conclusion that the instructional error was not harmless error.
WE CONCUR: GERRY L. ALEXANDER and JAMES M. JOHNSON, Justices.
NOTES
[1] The State has conceded on appeal that all three distances were the result of measurement with the same device. Wash. State Supreme Court oral argument, State v. Bashaw, No. 81633-6 (Sept. 17, 2009), at 21 min., 18 sec., video recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org; Resp't's Br. at 3 (adopting Bashaw's statement of the case, including her assertion that all three distances were measured, Appellant's Br. at 5).
[2] For speed measuring devices, this showing is now governed by CrRLJ 6.13 and IRLJ 6.6. No comparable rule exists for distance measuring devices.
[3] For devices relying on complex scientific principles, authentication is actually a compound determination, first involving the qualifications of a witness under ER 702 and then whether the mechanical device operated reliably. Hellenthal, 144 Wash.2d at 432, 28 P.3d 744. No ER 702 question is before the court in this case.
[4] Some devices operate in a manner such that any failure by the device to produce accurate results would be immediately obvious to the user (e.g., measuring tapes, yard sticks, or rulers). In such cases, it may be inferred from testimony by the user about measurements with the device that the results are accurate. This contrasts with rolling wheel measuring devices for which, like speed measuring devices, the internal workings are not observable by the user.
[5] General verdicts in criminal cases, of course, must still be unanimous to convict or acquit. See WASH. CONST. art. I, § 21; State v. Stephens, 93 Wash.2d 186, 190, 607 P.2d 304 (1980).
[6] In fact, three jurors had voted "no" but only one juror raised a hand when asked. Goldberg, 149 Wash.2d at 891, 72 P.3d 1083.
[7] This rule is not compelled by constitutional protections against double jeopardy, cf. State v. Eggleston, 164 Wash.2d 61, 70-71, 187 P.3d 233 (stating that double jeopardy protections do not extend to retrial of noncapital sentencing aggravators), cert. denied, ___ U.S. ___, 129 S.Ct. 735, 172 L.Ed.2d 736 (2008), but rather by the common law precedent of this court, as articulated in Goldberg.