IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32088-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORY E. MESECHER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Cory Mesecher appeals his conviction and sentence for

trafficking in stolen property, alleging several instances of instructional error and

insufficient evidence. He demonstrates, and the State concedes, that a jury finding that

he committed a major economic offense supporting an increased sentence was potentially

based on a factor that the State had excluded from its information or on factors that were

not supported by substantial evidence. We find no other error, however. We vacate the

finding of an aggravating circumstance and otherwise affirm.

FACTS AND PROCEDURAL BACKGROUND

Cory Mesecher and his two brothers were charged with taking power wire

belonging to Avista Utilities from an abandoned house in Stevens County. A project

coordinator for Avista testified that 3,300 feet of wire was removed from the house. He

estimated the value of the wire itself to be just under $2,500, but that the cost to repair the house would be more than $20,000.

At Mr. Mesecher's[1] trial, the State presented evidence that one or more of the brothers took wire from the house on several occasions, stripped the wire, separated it, and sold it to a salvage yard in Chewelah. An operator at the wrecking yard testified that she received almost 250 pounds of wire materials from Mr. Mesecher and his brothers over the span of about a week. Her records reflected that she made two purchases from Mr. Mesecher that amounted to about 20 percent of her total purchases from the brothers.

Mr. Mesecher was charged as a principal and an accomplice with one count of first degree theft and one count of first degree trafficking in stolen property. The information provided notice of the State's intent to seek an aggravated sentence above the standard range for the offenses based on two, but only two, of the four factors that can support the "major economic offense" aggravating circumstance, stating:

> [S]pecifically alleging, the current offense was a major economic offense or series of offenses, so identified by a consideration of any of the following factors:
> (i) The current offense involved multiple victims or multiple incidents per victim;
> (ii) The current offense involved attempted or actual monetary loss substantially greater than typical for the offense (9.94A.535(3)(d)).

Clerk's Papers (CP) at 3.

---

[1] Since the opinion requires no discussion specific to either of the defendant's brothers, all references to "Mr. Mesecher" are to the defendant, Cory Mesecher.

2

At trial, the jury was provided with the pattern instruction on accomplice liability over a defense objection that the instruction contained internally inconsistent language by stating that "more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice," and at the same time that "[a] person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not." CP at 36 (Instruction 23).

The defense did not object to the pattern definition instruction on the major economic offense aggravator, even though it had been prepared to include three of the factors that can support the aggravator rather than the two that had been identified by the information. The third factor included in the instruction was that proof beyond a reasonable doubt that "[t]he crime involved a high degree of sophistication or planning or occurred over a lengthy period of time" would support finding the aggravator. CP at 27 (Instruction 14).

The jury found Mr. Mesecher guilty of first degree trafficking in stolen property as charged in count two, but was unable to reach a verdict on the theft charge, as to which the trial court declared a mistrial. The jury returned a special verdict finding that the trafficking crime was a major economic offense.

The court sentenced Mr. Mesecher to six months on the trafficking charge and six months for the aggravating circumstance. It imposed total legal financial obligations (LFOs) of $6,650, consisting of $4,800 in restitution, mandatory costs of $700, and

3

discretionary costs of $1,150. The judgment and sentence contained boilerplate language stating the court had considered the defendant's ability to pay to which Mr. Mesecher made no objection, despite the fact that the court had not inquired into Mr. Mesecher's financial resources or the nature of the burden the LFOs would present.

Mr. Mesecher's motions for a new trial and a stay of his sentence pending appeal were denied. He appeals.

## ANALYSIS

Mr. Mesecher contends on appeal that (1) the trial court erred in giving a non-unanimity special verdict instruction, (2) the evidence did not support the "major economic offense" aggravating circumstance, (3) the accomplice liability instruction contained internally inconsistent language, and (4) the record does not support the finding that Mr. Mesecher has the current or future ability to pay the LFOs that were imposed. We address the asserted errors in turn.

*Non-unanimity special verdict instruction*

Mr. Mesecher contends that the trial court erred in instructing the jury that it did not need to be unanimous to answer no to the special verdict on the major economic offense aggravator. The instruction given by the court stated:

> In order to answer the special verdict forms "yes," you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you unanimously agree that the answer to the question is "no," or if after

4

full and fair consideration of the evidence you are not in agreement as to the answer, you must fill in the blank with the answer "no."

CP at 45 (Instruction 31). This type of instruction was properly in use for the 23 months that transpired between the Washington Supreme Court's July 2010 decision in *State v. Bashaw*, 169 Wn.2d 133, 146, 234 P.3d 195 (2010) and its June 2012 decision in *State v. Guzman Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012), which overruled *Bashaw*. It was no longer correct and should not have been used when Mr. Mesecher was tried in October 2013. But Mr. Mesecher did not object to the instruction in the trial court. He contends that the error in giving the instruction was a manifest constitutional error that may be raised for the first time on appeal. RAP 2.5(a)(3).

In *Bashaw*, our Supreme Court ruled that for purposes of a special verdict addressing an aggravating circumstance—and contrary to the pattern instruction then in use—"a unanimous jury decision is not required to find that the State has failed to prove the presence of a special finding increasing the defendant's maximum allowable sentence." 169 Wn.2d at 146. Relying on its earlier decision in *State v. Goldberg*, 149 Wn.2d 888, 72 P.3d 1083 (2003), *overruled by State v. Guzman Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012), it reasoned that while "unanimity is required to find the *presence* of a special finding increasing the maximum penalty, it is not required to find the *absence* of such a special finding." *Bashaw*, 169 Wn.2d at 147 (citation omitted). The court

5

therefore held the jury instruction stating that all 12 jurors must agree on an answer to the special verdict "was an incorrect statement of the law." *Id.*

Less than two years later, the court overruled *Bashaw*'s non-unanimity rule in *Guzman Nuñez*, having concluded that it "conflicts with statutory authority, causes needless confusion, does not serve the policies that gave rise to it, and frustrates the purpose of jury unanimity." 174 Wn.2d at 709-10.

Mr. Mesecher is correct that the instruction given in his case was improper in light of *Guzman Nuñez*, although as we have commented before when the same error has been raised by a criminal defendant, the error operates to a criminal defendant's advantage.[2] But Mr. Mesecher is wrong in contending that the error was a manifest constitutional error or, for that matter, constitutional error.

Mr. Mesecher points out that article I, section 21 of the Washington Constitution guarantees a right to a unanimous jury verdict in order to convict, and that the Sixth Amendment to the United States Constitution requires that a jury must unanimously find beyond a reasonable doubt any aggravating circumstance that increases a defendant's sentence. Br. of Appellant at 11. But as our Supreme Court pointed out in *Guzman*

---

[2] If jurors are required to deliberate to unanimity to answer yes, but not to answer no, then a criminal defendant will always be the beneficiary where the jurors give up their deliberation short of unanimity.

*Nuñez*, whether unanimity is required to *reject* an aggravating circumstance presents a different issue. 174 Wn.2d at 712 (citing *Bashaw*, 169 Wn.2d at 146).

The Supreme Court did not hold in *Guzman Nuñez* that its decision in *Bashaw* had violated the federal or state constitutions. It overruled *Bashaw* instead because *Bashaw* had been based on a rule announced in *Goldberg*, which it concluded, as noted earlier, "conflicts with statutory authority, causes needless confusion, does not serve the policies that gave rise to it, and frustrates the purpose of jury unanimity." *Guzman Nuñez*, 174 Wn.2d at 709-10. In the context of a jury's decision to acquit, the purpose of jury unanimity is not compliance with a constitutional mandate but, as explained by the court in *Guzman Nuñez*, "to promote the jurors' full discussion and well-considered determinations before returning a verdict." *Id.* at 718 (citing *State v. Cross*, 156 Wn.2d 580, 616, 132 P.3d 80 (2006) ("We want juries to deliberate, not merely vote their initial impulses and move on.")).

By failing to object, Mr. Mesecher failed to preserve an error that was not constitutional, let alone a manifest constitutional error. We will not entertain it for the first time on appeal. RAP 2.5(a).

*Due process and sufficiency challenges to the aggravated circumstance instruction*

Mr. Mesecher next contends that the special verdict must be vacated because two of three alternative factors identified to the jury as supporting the finding of a major

7

economic offense were not supported by substantial evidence and one of the factors had not been identified in the information. Although the prosecutor focused his attention on the first factor in closing argument, the State concedes trial court error on both counts and states that "the Special Verdict should be stricken, on this ground." Br. of Resp't at 6.

The State nonetheless argues that the sentence itself cannot be appealed because "a Standard Range sentence is not appealable, unless there was an error in determining the Standard Range." *Id.* at 4. The standard range for Mr. Mesecher's trafficking in stolen property offense, based on his offender score of "1," was 6 to 12 months. The judgment and sentence provides for a total of 12 months of confinement—"6 months on the base charge of Trafficking in Stolen Property, plus an additional 6 months for the aggravating circumstances, for a total of 12 months." CP at 60.

The sentence is anomalous, in that the use of an aggravator finding contemplated by RCW 9.94A.535(3) is to "support a sentence above the standard range," and here, the total period of confinement imposed was within the standard range. Nonetheless, we will not ignore the fact that the court based six months of the sentence on the jury's finding of the aggravating circumstance. This was especially clear when the court announced the sentence:

> And I think that the jury has found that aggravator in this case, and so of course I would not question their verdict, here; I think there's evidence to support it as to the aggravator.

8

> Now, what to do about it, though, in the end I agree with [defense counsel] here on this penalty. And it would be six months on the underlying trafficking in stolen property, and then just shy of another six months, so one day shy of a year on the—the total sentence, and give [five] months and 29 days of that would be the aggravator.

Report of Proceedings (RP) at 283-84.

The relief requested by Mr. Mesecher in connection with this error is only that the "special verdict . . . be stricken." Br. of Appellant at 16. Having filed the opening brief in late June 2014, appellate counsel undoubtedly realized that Mr. Mesecher, who was ordered to begin serving his 12-month sentence on or before November 5, 2013, would complete the sentence before his appeal was even set for argument. While the sentence imposed on the basis of the aggravator may be moot, we nonetheless address it to reject the State's argument that the fact that the total sentence imposed fell within the standard range would prevent Mr. Mesecher from appealing the six months imposed for the aggravating circumstance.

RCW 9.94A.585(1) provides that "[a] sentence within the standard sentence range . . . for an offense shall not be appealed." As explained in *State v. Williams*, 149 Wn.2d 143, 146-47, 65 P.3d 1214 (2003), the general rule is that "the *length* of a criminal sentence imposed . . . is not subject to appellate review, so long as the punishment falls within the correct standard sentencing range," a precept "aris[ing] from the notion that, so long as the sentence falls within the proper presumptive sentencing ranges set by the legislature, there can be no abuse of discretion as a matter of law as to the sentence's

9

*length.*" (Emphasis added.) "[I]t is well established," however, "that appellate review is still available for the correction of legal errors or abuses of discretion in the determination of what sentence applies." *Id.* at 147.

Mr. Mesecher's challenge was not to the length of his sentence per se, but to the sentencing court's imposition of a sentence that it extended based on a jury finding of an aggravating circumstance that the State concedes cannot stand. As a practical matter there is nothing to be done about the sentence in this case. But contrary to the argument of the State, different circumstances would support not only vacating the finding of the aggravating circumstance, but also remanding for resentencing and the possibility of a new trial on the aggravator.

We accept the State's concessions and vacate the aggravating circumstance.

*Accomplice liability instruction*

Mr. Mesecher next argues that his conviction must be reversed because the accomplice liability instruction contained internally inconsistent language. Where a defendant alleges an error of law in a jury instruction, we review the instruction de novo. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005).

The Washington pattern instruction on accomplice liability given by the trial court informed the jury:

> A person is guilty of a crime if it is committed by the conduct of
> another person for which he or she is legally accountable. A person is

10

legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.

A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:

(1) solicits, commands, encourages, or requests another person to commit the crime; or

(2) aids or agrees to aid another person in planning or committing the crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

CP at 36 (Instruction 23); 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY

INSTRUCTIONS: CRIMINAL 10.51, at 217 (3rd ed. 2008) (WPIC).

As noted in *State v. Hoffman*, WPIC 10.51 "is drawn directly from the accomplice

statute." 116 Wn.2d 51, 102-04, 804 P.2d 577 (1991) (finding no error in the instruction

insofar as it correctly states the mental state required for an accomplice). The pattern

instruction largely mirrors the language of the accomplice statute, adding a definition of

the term "aid." *State v. Williams*, 28 Wn. App. 209, 211, 622 P.2d 885 (1981). Its

definition of "aid" as requiring assistance or readiness to assist is consistent with

Washington case law. *Id.*; *In re Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979); *State

v. Aiken*, 72 Wn.2d 306, 349, 434 P.2d 10 (1967), *vacated on other grounds by Wheat v.

Washington*, 392 U.S. 652, 88 S. Ct. 2302, 20 L. Ed. 2d 1357 (1968).

11

Mr. Mesecher nonetheless argues that the last two sentences of the instruction are inconsistent insofar as they require "more than mere presence" to establish that a person is an accomplice but then states that a person may be an accomplice "whether present at the scene or not." CP at 36. The instruction would be internally inconsistent if its definition of accomplice required "more than mere presence"—"presence-plus"—and yet the instruction elsewhere stated that presence was not required. But the language that concerns Mr. Mesecher is not part of the definition of accomplice.

The definition is found in the instruction's language, "A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either: (1) solicits, commands, encourages, or requests another person to commit the crime; or (2) aids or agrees to aid another person in planning or committing the crime." *Id.* That definition can be satisfied by circumstances in which a person is present at the crime, or circumstances in which a person is not present—it depends on what else the person does in the way of soliciting, commanding, encouraging, requesting, aiding or agreeing to aid another person in planning or committing the crime. There is nothing contradictory, then, in saying that an accomplice might be present at the crime, or might not be. The last two sentences of the instruction simply clarify that as a factor, a person's presence at the crime is neither necessary nor sufficient to establish his or her status as an accessory.

The trial court correctly overruled Mr. Mesecher's objection when it observed, "You can be an accomplice if you're present, and do something in addition, and then you can be an accomplice when you're not even present if you orchestrate or command or solicit, set up the whole affair." RP at 196. The instruction is not internally inconsistent.

*Alleged failure to consider ability to pay LFOs*

Mr. Mesecher's final challenge is to the trial court's imposition of LFOs. He contends that the court failed to take into account his present or future ability to pay, as required by RCW 10.01.160. While the felony judgment and sentence form used by the court contains a printed finding that the court considered Mr. Mesecher's ability to pay,[3] the record does not otherwise reflect such consideration.

Evidence of ability to pay was unnecessary to support the mandatory financial obligations imposed by the court. The $500 victim assessment, $200 criminal filing fee, and $100 DNA collection fee are each required by statute, irrespective of the defendant's ability to pay. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) (noting that,

---

[3] The felony judgment and sentence form employed by the court includes the following language:

**2.5 Legal Financial Obligations/Restitution.** The court has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. (RCW 10.01.160).

CP at 60.

13

for these costs, "the legislature has directed expressly that a defendant's ability to pay should not be taken into account"); RCW 7.68.035(1)(a); RCW 36.18.020(2)(h); RCW 43.43.7541. Restitution is also required by statute, without regard to ability to pay. RCW 9.94A.753(4), (5) ("Restitution *shall* be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property" and "[t]he court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount.") (emphasis added).

With respect to the financial obligations that were discretionary, Mr. Mesecher made no objection at the sentencing hearing and thereby failed to preserve a claim of error. RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680, (2015); *State v. Duncan*, 180 Wn. App. 245, 253, 327 P.3d 699 (2014), *review granted*, _____ P.3d _____ (2015). We will not consider the issue for the first time on appeal.

We vacate the aggravated circumstance finding and otherwise affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Lawrence-Berrey, J.

14