[No. 13817-1-I.   Division One.   January 11, 1985.]

THE CITY OF SEATTLE, *Respondent,* v. MARK S. PETERSON, *Petitioner.*

*Hollowell, Pisto, Kalenius & Bulley* and *O. W. Hollowell,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Russell H. Dawson* and *Augustin Jimenez, Assistants,* for respondent.

SCHOLFIELD, A.C.J.—Discretionary review was granted in this case in which Mark S. Peterson seeks to reverse a decision of the Superior Court affirming his conviction in Seattle Municipal Court for exceeding the posted speed limit. Peterson contends that radar evidence was improperly admitted. We agree and reverse.

On March 1, 1982, at 6:30 p.m., Officer Thomas Byers of the Seattle Police Department was parked on 27th Avenue N.E. and was using a CMI radar unit to check the speeds of vehicles on N.E. 95th Street. Peterson's vehicle approached 27th Avenue N.E. in an eastbound direction on N.E. 95th. After Peterson passed the intersection with 27th Avenue N.E., Byers pursued him a short distance, signaled him to a stop, and issued a citation for traveling 43 m.p.h. in a 30 m.p.h. zone. Peterson testified that he was going 30 m.p.h. At his trial, he objected to the admission of the CMI radar unit measure of his speed. The objection was based on Officer Byers' alleged lack of qualifications as an operator and upon the absence of any evidence authenticating the particular radar unit involved as a device correctly employing the Doppler effect[1] so that, properly operated, it produced accurate results, *i.e.,* an accurate measure of the speed of a passing vehicle. The only other evidence of speed

---

[1]The Doppler effect is a change in the frequency with which sound, light or radio waves from a given source reach an observer, the frequency decreasing with the speed at which source and observer move away from each other and increasing with the speed at which they move toward each other. *Webster's Third New International Dictionary* 675 (1969).

was Officer Byers' testimony that, before he locked in a reading on the radar unit of 43 m.p.h., it appeared to him from visual observation that Peterson's vehicle was traveling between 40 and 45 m.p.h.

The municipal court judge hearing the trial of this case responded to Peterson's objection by denying that the court was taking judicial notice of the accuracy of the radar unit and stating at the conclusion of the case that he was satisfied that the radar was accurate. The superior court judge hearing the appeal of Peterson's conviction from municipal court stated in his decision that "[t]he process or system of a particular model of traffic radar is a proper subject of judicial notice."

ER 901 provides, in part, as follows:

> **(a) General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
>
> **(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule: . . .
>
> (9) *Process or System.* Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

Peterson argues that before results or readings from a device employing a scientific process, system or principle are admissible in evidence, ER 901 requires proof that the device in question is so designed and constructed that, when properly operated, the results or readings are accurate.

No evidence was offered for the purpose of meeting this requirement. Officer Byers' testimony was limited to his actions in calibrating and operating the CMI radar unit.

Seattle argues that acceptance of the Doppler effect by the scientific community is so widely known that the court can take judicial notice of it and expert testimony is unnecessary. Seattle's objection to being required to

produce evidence that the particular radar unit involved properly employed the Doppler effect so as to ensure accuracy of the readings of the radar unit is that the requirement would prove unduly burdensome and result in "absurd consequences". The City's arguments are unpersuasive.

The evidentiary requirement employed in ER 901 was adopted generally by both state and federal courts prior to Washington's adoption in April 1979 of the Rules of Evidence. *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923) held that evidence of a polygraph test based on scientific principles was not admissible until it could be shown that the test involved was generally accepted as reliable by the relevant scientific community. Only then would the court be justified in admitting the evidence.

In *State v. Canaday,* 90 Wn.2d 808, 813, 585 P.2d 1185 (1978), a case involving measurement of blood alcohol, the court cited *Frye* with approval and held that the reliability of scientific evidence must be shown "as a prerequisite to its admission." To the same effect are *State v. Woo,* 84 Wn.2d 472, 527 P.2d 271 (1974), also a polygraph case, and *State v. Baker,* 56 Wn.2d 846, 355 P.2d 806 (1960), a Breathalyzer examination case.

■ The issue here is not the reliability of a scientific principle (the Doppler effect), but whether the particular machine employing the principle is so designed and constructed that the results produced by proper operation are reliable. The inquiry is as to the reliability of the machine itself. If the validity of a scientific principle is a prerequisite to its admission *into evidence,* then consistency requires that evidence of the ability of a machine to employ that scientific principle reliably must also precede admission of the machine's results into evidence.

A number of cases so hold. One of those is *State v. Doles,* 70 Ohio App. 2d 35, 433 N.E.2d 1290 (1980), where the Ohio court reversed a conviction for speeding, relying upon its prior decision in *State v. Wilcox,* 40 Ohio App. 2d 380, 319 N.E.2d 615 (1974). *Doles* held at page 37:

[A] defendant may not be convicted of speeding solely upon evidence obtained from a radar speed meter device mounted in a moving patrol car in the absence of expert testimony with respect to the construction of the device and its method of operation with respect to its ability to differentiate the speed of a vehicle approaching the moving patrol car from the opposite direction from the combined speed at which they are moving toward each other." Such evidence goes toward establishing the dependability of a radar speed meter device mounted in a moving patrol car.

The *Doles* court went on to hold that the dependability of the radar unit involved was not of common knowledge within the court's jurisdiction and, therefore, could not be the subject of judicial notice. Other courts have held that a basic element of proof in a speeding prosecution based upon radar evidence is evidence showing the accuracy of the particular radar unit employed in clocking the defendant's speed. *E.g., State v. Wojtkowiak,* 174 N.J. Super. 460, 416 A.2d 975 (1980); *State v. Musgrave,* 171 N.J. Super. 477, 410 A.2d 64 (1979); *see generally* Annot., 47 A.L.R.3d 822 (1973).

The City contends it was proper for the court to take judicial notice of the scientific reliability of the CMI device. In *Rogstad v. Rogstad,* 74 Wn.2d 736, 741–42, 446 P.2d 340 (1968), the Washington Supreme Court stated:

The traditional rule is that courts may take judicial notice of facts which are within the common knowledge of the community. The modern trend seems to have enlarged this conception to state that a fact may be noticed if it is verifiably certain by reference to competent, authoritative sources. This court has accepted the broadened scope of judicial notice. *State ex rel. Humiston v. Meyers,* 61 Wn.2d 772, 380 P.2d 735 (1963).

(Footnotes omitted.)

The *Rogstad* court then went on to approve the action of the trial judge in taking judicial notice that real estate

commissions, title insurance premiums and other incidental costs are commonly incurred in selling real estate.

ER 201(b) is consistent with *Rogstad* and provides:

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

ER 201(d) makes taking judicial notice mandatory "if requested by a party and supplied with the necessary information."

Here, the only evidence offered regarding the radar unit was the testimony of Officer Byers, who candidly acknowledged that his information about the radar device was limited to instructions on how to calibrate and operate it. No evidence was offered relating to the design and construction of the radar unit. The only evidence on the accuracy of the radar unit was the opinion of Officer Byers that he had confidence in the accuracy of the unit.

The City, so far as the record reflects, made no effort to supply the court with the type of information the court would need in considering whether or not to take judicial notice of the reliability of the CMI radar unit. The record on appeal provides no basis upon which the trial court could treat the issue of the reliability or accuracy of the CMI radar unit as a matter of common knowledge in the state of Washington. We conclude that the Superior Court erred in ruling that "[t]he process or system of a particular model of traffic radar is a proper subject of judicial notice."

Peterson also objected to testimony by Officer Byers as to the reading he obtained from the CMI radar unit on the ground that Officer Byers was not qualified as an operator of the unit. This is a factual issue and we find the evidence sufficient to support a finding by the trial court that he was qualified.

Judgment reversed and remanded for a retrial.

RINGOLD and DURHAM, JJ., concur.