[Nos. 29633-7-I; 31830-6-I.   Division One.   August 1, 1994.]

THE CITY OF BELLEVUE, *Respondent,* v. DAVID R. LIGHTFOOT, *Petitioner.*

THE CITY OF BELLEVUE, *Petitioner,* v. JOHN STRAUSS, ET AL, *Respondents.*

*Stephen G. Smith,* for petitioner Lightfoot.

*Richard L. Andrews, City Attorney,* and *Eugene Piculell, Assistant,* for the City of Bellevue.

*Scott A. McDonald* and *Strauss & McDonald;* and *O.W. Hollowell,* for respondents Strauss et al.

COLEMAN, J. — This consolidated action involves discretionary review of two superior court decisions, one affirming a speeding conviction entered against David Lightfoot and one reversing speeding convictions entered against John Strauss, Lisa Huskey, and William Murphy. The primary

issue on review concerns the foundational requirements for admission of police traffic radar evidence at trial. In Lightfoot's case, we reverse the order of the Superior Court and remand for further proceedings. In Strauss et al., we reverse the order of the Superior Court and reinstate the judgment of the District Court.

## I

### CITY OF BELLEVUE v. LIGHTFOOT

On July 11, 1990, Officer Rasko of the Bellevue Police Department cited David R. Lightfoot for speeding. Lightfoot contested the citation, and a hearing was held on March 22, 1991, at the King County District Court, Bellevue Division. At the contested hearing, the trial court considered a written statement by Officer Rasko pursuant to the limited hearsay exception of RCW 46.63.090. Officer Rasko's statement indicated that he visually observed Lightfoot exceeding the posted limit of 35 m.p.h. and that he obtained a radar reading of 49 m.p.h. using a Kustom Falcon model radar device. Officer Rasko, who is a qualified Doppler radar operator, stated that he calibrated the device both before and after his contact with Lightfoot, that there was no radio frequency interference, and that Lightfoot's vehicle was the lone target. Officer Rasko believed that the device was functioning properly at the time of the citation.

Lightfoot subsequently moved to strike Officer Rasko's statement regarding the radar results, arguing that the City had failed to authenticate the accuracy of the engineering design of the radar device as required by ER 901 and *Seattle v. Peterson*, 39 Wn. App. 524, 693 P.2d 757 (1985). The trial court denied Lightfoot's motion.

The City then called its expert witness, Edward Cole, to authenticate the radar device. Prior to the City's examination of Cole, Lightfoot asked the court for permission to reserve voir dire of Cole until his own examination. The City had no objection, and the trial court consented.

During direct examination, Cole testified about his experience maintaining, calibrating, and checking the

accuracy of radar devices, his education and training regarding radar equipment, and his training with the manufacturer regarding the calibration and certification of radar devices. Cole then indicated that he was responsible for the certification of the particular radar device used to cite Lightfoot. Cole described the certification process and the quality assurance tests he performed, which included a signal generator test and an internal calibration check. Based upon his examination and evaluation of the radar device, it was Cole's opinion that the unit had an accuracy of plus or minus 1 m.p.h.

Prior to cross examination, Lightfoot began to question Cole about the scope of his expertise, attempting to show that Cole had no experience or training in the field of engineering. The City objected on the basis of relevancy. Notwithstanding the trial court's earlier ruling that Lightfoot could reserve voir dire until his own examination of Cole, the court sustained the City's objection and did not permit Lightfoot to conduct any voir dire examination. The trial court stated:

> Mr. Cole's expertise has been — the court has noted that he is an expert in his field. Please confine your questions to your actual citation. And if you wish to confine it to whether this particular instrument was properly working.

Lightfoot proceeded accordingly.

During cross examination, it was brought out that the National Bureau of Standards (NBS) generates model performance specifications for police traffic radar devices. Cole was questioned and testified about the accuracy of the radar device under these standards:

> [DEFENSE:] Okay. Mr. Cole, could you tell me which of the tests as outlined by this document you have performed on this particular radar unit?
>
> [COLE:] The same tests that I was telling earlier when he asked me what type of testing we do to certify the accuracy of the equipment, and this is what I've been trained by the manufacturer on how to test the accuracy of the units. And also I have the complete manual and schematics that show the design and construction of the unit right here. You're welcome to look at it.

. . . .

. . . As far as the accuracy goes, I have tested it to the National Bureau of Standards because the frequencies we use are traceable to the National Bureau of Standards. That is where the National Bureau of Standards comes in. All these specifications test — there's hundreds of tests. It costs thousands of dollars to run all of these tests. This unit was tested for those. This unit — exact unit right here. I can testify that the design and construction of this unit does meet these standards.

On redirect, Cole testified that he conducted tests on the radar device within the manufacturer's specified recommendations.

The District Court allowed the radar results to be entered into evidence and determined that there had been a speeding infraction by Lightfoot. The Superior Court affirmed, finding that the accuracy of the radar device's engineering design was not required for purposes of authentication. Lightfoot filed a motion for discretionary review, which was granted by a panel of this court.

## II

### City of Bellevue v. Strauss, et al.

During the summer and early fall of 1990, John Strauss, Lisa Huskey, and William Murphy were each issued speeding citations in unrelated incidents. The three infractions were consolidated and a contested hearing was held during April 1991 at the King County District Court, Bellevue Division.

At the contested hearing, each officer's statement or testimony indicated that he visually observed the Defendant traveling over the posted speed limit and that he obtained a radar reading, using a Kustom Falcon model radar device, which corresponded to the visual estimate. Each officer further stated that he calibrated the radar device both before and after the incident, that the Defendant was alone in the radar beam, and that he is a trained and qualified radar operator.

The City then offered the testimony of its expert witness, Edward Cole, to authenticate the radar device. During direct examination, Cole testified that he had completed a 2-year

program at a vocational school, which included special course work in radar equipment; that he holds a Federal Communications Commission license with radar endorsement; that he has approximately 7,000 hours of experience in the maintenance and calibration of radar units; that he is professionally certified as a radar technician; and that he has successfully completed factory training by a radar unit manufacturer.

After providing his credentials, Cole testified that the radar devices used to determine the speed of each Defendant recorded accurate and reliable results. In making this opinion, Cole relied on various quality assurance tests that he performed, including a signal generator test, an internal calibration check, and a complete maintenance check.

As in Lightfoot's case, it was brought out on cross examination that the NBS generates model performance specifications for police traffic radar devices.[1] Cole testified that he does not perform all of the tests recommended by the NBS because, according to his understanding, they have already been performed by the International Association of Chiefs of Police (IACP).[2]

After hearing all of the evidence, the District Court found that Cole qualified as an expert and held that, under *Bellevue v. Mociulski*, 51 Wn. App. 855, 756 P.2d 1320, *review denied*, 111 Wn.2d 1019 (1988), there was a sufficient evidentiary foundation for admission of the radar results. Relying on such results, the trial court entered judgment against Strauss, Huskey, and Murphy. They appealed, arguing that the accuracy of the radar device's engineering design had not been authenticated in accordance with *Seat-*

---

[1]These specifications were developed by the NBS in conjunction with the National Highway Traffic Safety Administration (NHTSA). *See* U.S. Dep't of Transp., *Model Performance Specifications for Police Traffic Radar Devices*, NHTSA Technical Report DOT HS-806-191 (1982).

[2]*See IACP Research & Dev. Div. Test Program Summary* vol. 1 (1984). The radar equipment used by the City of Bellevue is listed in this summary and is stated to be in compliance with the NHTSA/NBS performance specifications. The summary recommends, however, that agencies purchasing the radar devices have them retested to ascertain compliance with the specifications.

*tle v. Peterson*, 39 Wn. App. 524, 693 P.2d 757 (1985). The Superior Court agreed, finding that *Mociulski* was distinguishable, and reversed. The City of Bellevue subsequently sought discretionary review. This court granted the motion and consolidated the case with Lightfoot's.

The issue that we are asked to decide on review is whether the District Courts erred by admitting into evidence the results of the police traffic radar evidence. Appellants contend that the radar evidence was improperly admitted because the particular devices used by the police officers were not authenticated in accordance with the foundational requirements set forth in *Seattle v. Peterson, supra*.[3] In particular, Appellants argue that, under *Peterson*, police traffic radar evidence is admissible only when a competent expert testifies that the engineering design of the particular radar device used is "generally accepted [as reliable] in the relevant scientific community". Br. of Appellant, at 13. We disagree.

In *Peterson*, the defendant contested a speeding citation. At trial, the citing officer testified that he used a police traffic radar device to measure the speed of the defendant's motor vehicle. Over a defense objection, the trial court admitted the radar evidence and found that the defendant had committed a speeding infraction. On discretionary review, the court reversed, holding that the radar evidence was improperly admitted based solely on the citing police officer's testimony. In so holding, the *Peterson* court addressed the foundational requirement for admission of police radar evidence, stating:

> The issue here is not the reliability of a scientific principle (the Doppler effect), but whether the particular machine employing the principle is so designed and constructed that the results produced by proper operation are reliable. The inquiry is as to the reliability of the machine itself. If the validity of a scientific principle is a prerequisite to its admission into evidence, then consistency requires that *evidence of*

---

[3]This opinion collectively refers to Lightfoot, Strauss, Huskey, and Murphy as "Appellants".

*the ability of a machine to employ that scientific principle reliably must also precede admission of the machine's results into evidence.*

(Italics ours.) *Peterson,* at 527.

■ Although some of this language and the sources cited in *Peterson* can be read to support Appellants' contention, we find that *Peterson* is not so expansive. Rather, we read *Peterson* to stand for the general proposition that police traffic radar results are not admissible unless the particular radar device used is shown to be reliable. A showing of reliability, in turn, requires evidence demonstrating that the particular radar unit was functioning properly and produced accurate results at the time of the infraction. A subsequent case, *Bellevue v. Mociulski, supra,* makes this point clear.

In *Mociulski,* this court specifically addressed the issue of accuracy and clarified the type of evidence required to satisfy the foundational requirements for admission of police traffic radar evidence. The *Mociulski* court first noted that *Peterson* requires a radar device to be authenticated or "in other words, shown to be reliable, before evidence of its results are admissible." *Mociulski,* at 860. The court then indicated that a showing of reliability requires expert testimony that the particular device used recorded accurate results, stating:

[T]he authentication of the speed measuring device involves a compound determination. Before the machine is deemed reliable, the witness testing the machines or monitoring the testing must first show his/her qualifications to make and/or evaluate the tests. The witness must first qualify as an expert via knowledge, skill, experience, training, or education. ER 702. *After the witness has qualified as an expert, he/she must show that the machines passed the requisite tests and checks. Only then can the speed measuring devices be deemed reliable.*

(Italics ours.) *Mociulski,* at 860-61; *see also Mociulski,* at 859.[4]

---

[4]We reject Lightfoot's contention that the holding in *Mociulski* is limited to certification cases under former JTIR 6.6. *Mociulski* specifically identifies the foundational requirements for admission of radar results, whether provided by a certificate pursuant to court rule or by an expert's direct testimony.

Thus, when *Peterson* and *Mociulski* are read together, it is clear that the foundation for admission of police traffic radar evidence does not require expert testimony that the engineering design of the particular radar device is "generally accepted [as reliable] in the relevant scientific community". Rather, it is sufficient that, in addition to testimony that the device was functioning properly, a qualified expert testify that the particular device passed the requisite tests and checks to ensure its operational accuracy.

Attempting to avoid this result, Appellants cite *State v. Cauthron*, 120 Wn.2d 879, 846 P.2d 502 (1993) as holding to the contrary. In that case, the issue before our Supreme Court was the admissibility of DNA typing evidence obtained through the restricted fragment length polymorphism method. The court applied the *Frye v. United States*, 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923) standard for admissibility of novel scientific evidence. The court held that novel, experimental evidence is admissible only when both the underlying scientific principle *and* the technique employing that principle find general acceptance in the scientific community. *Cauthron*, at 889.

Appellants argue that the stringent *Frye* analysis set forth in *Cauthron* applies equally to the admissibility of police traffic radar evidence. However, the principles involved in traffic radar evidence are not novel or experimental. Indeed, a survey of the relevant case law indicates that the foundational requirements set forth in *Mociulski* represent the general approach for admission of police traffic radar evidence at trial. Specifically, in the majority of jurisdictions, courts take judicial notice of the general reliability of radar, including both the scientific principle and the means employing that principle, to measure the speed of motor vehicles. *State v. Primm*, 43 Kan. App. 2d 314, 316, 606 P.2d 112 (1980) (citing Thomas J. Goger, Annotation, *Proof, by Radar or Other Mechanical or Electronic Devices, of Violation of Speed Regulations*, 47 A.L.R.3d 822, 827-28, 831-32 (1973 & Supp. 1994)). These jurisdictions

continue to require proof, however, that a particular radar device produced *accurate* results. *Primm*, at 315-16; *see also* Annotation, 47 A.L.R.3d at 827-28. As in *Bellevue v. Mociulski*, 51 Wn. App. 855, 756 P.2d 1320, *review denied*, 111 Wn.2d 1019 (1988), such proof consists of testimony that the device in question passed certain tests and checks. *Mociulski*, at 861; *see Primm*, at 114 (citing *People v. Burch*, 19 Ill. App. 3d 360, 311 N.E.2d 410 (1974)).

Here, applying the relevant analysis, we find that the radar results were properly admitted into evidence as they related to Strauss, Huskey, and Murphy. In those cases, there is substantial evidence to support the trial court's finding that Cole possessed the training, experience, and knowledge necessary to qualify as an expert. The evidence in those cases is also sufficient to show that Cole performed those tests and checks necessary to ensure the accuracy of the radar devices. *See Commonwealth v. Whynaught*, 377 Mass. 14, 17-18, 384 N.E.2d 1212, 1215 (1979) (providing survey of cases establishing what tests are sufficient to prove accuracy of radar device). Finally, the officers' testimony that the radar devices were functioning properly is uncontested on review. We therefore hold that the radar-based evidence of speed, in combination with the officers' visual estimates, supports the District Court's finding that Appellants Strauss, Huskey, and Murphy committed a speeding infraction.

In Lightfoot's case, the State conceded at oral argument that Lightfoot was entirely cut off from conducting his voir dire examination of Cole's expertise. It appears from the record that Lightfoot intended to inquire only about Cole's expertise in matters related to radar engineering and design. As we have indicated, the accuracy of a radar device's engineering design is not relevant to the inquiry under *Mociulski*. Because, however, Lightfoot was not given any opportunity to inquire as to Cole's general qualifications, we reverse and remand for a new trial.

We reverse Lightfoot and remand for a new trial. We reverse Strauss et al., and reinstate the judgment of the District Court.

KENNEDY and AGID, JJ., concur.

Reconsideration denied September 9, 1994.

Review denied at 125 Wn.2d 1025 (1995).