[No. 41277-2-II.    Division Two.    May 1, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH O. EHRHARDT, *Appellant*.

*James L. Reese III*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Jeremy A. Morris, Deputy*, for respondent.

¶1 WORSWICK, A.C.J. — A jury found Joseph Ehrhardt guilty of second degree burglary and second degree theft for

entering a shed on Brian Glaze's property and exerting unauthorized control over items found therein. Ehrhardt appeals, arguing (1) the trial court erred in refusing to give a jury instruction that mere possession of stolen property was insufficient to prove theft or burglary, (2) the trial court erred in giving an expert testimony instruction, (3) the trial court erred by denying Ehrhardt an opportunity to voir dire an expert witness regarding his qualifications, (4) the trial court gave an erroneous instruction defining "value" for the purposes of theft, and (5) the evidence was insufficient to support Ehrhardt's convictions. We affirm Ehrhardt's burglary conviction but reverse his theft conviction with prejudice because the State presented insufficient evidence to support the charge.[1]

## FACTS

¶2 On the evening of June 15, 2010, Glaze arrived home to find Ehrhardt's pickup truck in Glaze's driveway. Ehrhardt was working under the truck's hood, and Ehrhardt explained to Glaze that the truck would not start. Ehrhardt seemed nervous and refused Glaze's offer of help. Ehrhardt eventually got the truck started and drove away.

¶3 After Ehrhardt left, Glaze noticed that a number of items that he normally kept inside a shed had been piled outside his house. The items consisted of two rotary hammers, a pressure washer, a box of stereo wiring, an air compressor, and two nail guns. Glaze called his wife to check whether she had moved the tools, and then called 911 to report a possible break-in or theft and gave the police a description of Ehrhardt and his pickup truck. Glaze later discovered that gasoline had been taken from his lawn mowers and two four-wheelers, and that a gasoline can was missing from the back porch.

---

[1] Because we reverse Ehrhardt's theft conviction for insufficient evidence, we do not reach his argument that the trial court gave an erroneous instruction on the definition of "value."

¶4 The police subsequently apprehended Ehrhardt, and Glaze went to the scene. Glaze identified his gasoline can in the back of Ehrhardt's truck.

¶5 The State charged Ehrhardt with second degree burglary and second degree theft. At Ehrhardt's jury trial, Glaze testified to the above facts. Glaze further testified about his four years of experience working in construction and the cost of the tools that had been moved from the shed.

¶6 Glaze testified that he bought the air compressor for $100 five or six years before trial, but that he had never used it and it was brand new. He testified that he purchased the pressure washer for $199 within the last year. And he testified that he acquired the items in the stereo wiring box for well over $200 or $300 "over the years," but that the items were "just bits and parts and pieces" at that point, worth $100. Report of Proceedings (RP) at 84.

¶7 Glaze further testified that the rotary hammers belonged to his employer, that they cost about $450, and that they were about three years old. He testified that the nail guns also belonged to his employer, that they cost "in the $230 range" each, and that they were also about three years old. RP at 86-87. Glaze identified the items from photographs the State admitted into evidence. Ehrhardt did not request to voir dire Glaze about his qualifications to testify about the cost or value of these items, nor did he object to Glaze's testimony on this point.

¶8 The trial court gave an expert testimony jury instruction over Ehrhardt's objection. The trial court declined to give Ehrhardt's proposed instruction that stated, "Mere possession of stolen property alone is insufficient to find the defendant guilty of either theft 2 or burglary 2." Clerk's Papers (CP) at 38. The jury found Ehrhardt guilty as charged. Ehrhardt appeals.

## ANALYSIS

### I. Mere Possession Instruction

¶9 Ehrhardt first argues that the trial court erred by refusing to grant his proposed instruction that mere possession of property is insufficient to show theft or burglary. We disagree.

¶10 We review a trial court's refusal to give jury instructions for abuse of discretion. *State v. Buzzell*, 148 Wn. App. 592, 602, 200 P.3d 287 (2009). Jury instructions are improper if they do not permit the defendant to argue his theories of the case, if they mislead the jury, or if they do not properly inform the jury of the applicable law. *State v. Vander Houwen*, 163 Wn.2d 25, 29, 177 P.3d 93 (2008). A trial court is under no obligation to give inaccurate or misleading instructions. *State v. Crittenden*, 146 Wn. App. 361, 369, 189 P.3d 849 (2008).

¶11 Ehrhardt's instruction was based on *State v. Mace*, 97 Wn.2d 840, 650 P.2d 217 (1982). The *Mace* court recognized that "proof of possession of recently stolen property, unless accompanied by other evidence of guilt, is not prima facie evidence of burglary." 97 Wn.2d at 843. To support a burglary conviction, the State must also show at least slight corroborative evidence of other inculpatory circumstances. 97 Wn.2d at 843 (quoting *State v. Portee*, 25 Wn.2d 246, 253-54, 170 P.2d 326 (1946)). Such inculpatory circumstances include "presence of the accused near the scene of the crime," or "flight, improbable or inconsistent explanations, the giving of fictitious names or circumstantial proof of entry." 97 Wn.2d at 843, 844-45.

¶12 Ehrhardt's proposed instruction stated, "Mere possession of stolen property alone is insufficient to find the defendant guilty of either theft 2 or burglary 2." CP at 38. This instruction was correct; both second degree burglary and second degree theft require proof beyond mere posses-

sion of stolen property. RCW 9A.52.030(1);[2] RCW 9A.56-.020(1),[3] .040(1).[4]

¶13  However, this instruction was also misleading. *Mace* held that evidence of possession of stolen property plus inculpatory circumstances could suffice to support a burglary conviction. 97 Wn.2d at 843 (quoting *Portee*, 25 Wn.2d at 254). Ehrhardt's proposed instruction did not inform the jury that Ehrhardt's presence at the scene of the burglary, combined with his possession of recently stolen property, could be sufficient proof of second degree theft or second degree burglary. Ehrhardt's instruction could have misled a layperson to believe that Ehrhardt's possession of stolen property was not at all probative of burglary or theft. As such, the trial court was under no obligation to give Ehrhardt's instruction.

■ ¶14  Even if Ehrhardt's instruction was not misleading, the trial court did not abuse its discretion in rejecting it. "Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law." *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005).

¶15  The trial court gave correct "to convict" instructions that stated every element of second degree burglary and second degree theft. The "to convict" instructions thus allowed Ehrhardt to argue his theory that the State's evidence was insufficient to show every element of the crimes charged. Moreover, the instructions were not misleading. The jury instructions were therefore proper and the trial court did not err in refusing to add Ehrhardt's

---

[2] "A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1).

[3] " 'Theft' means: (a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services . . . ." RCW 9A.56.020(1)(a).

[4] "A person is guilty of theft in the second degree if he or she commits theft of: (a) Property or services which exceed(s) seven hundred fifty dollars in value but does not exceed five thousand dollars in value . . . ." RCW 9A.56.040(1)(a).

proposed instruction. Ehrhardt's argument on this point fails.

## II. EXPERT TESTIMONY INSTRUCTION

¶16 Ehrhardt next argues that the trial court erred by giving an expert testimony instruction because Glaze had not been certified as an expert witness. We do not consider Ehrhardt's argument on this point.

¶17 Over Glaze's objection, the trial court gave the pattern jury instruction on expert testimony, found at 11 *Washington Practice: Pattern Jury Instructions: Criminal* 6.51, at 199 (3d ed. 2008) (WPIC).[5] Ehrhardt does not argue that this instruction was an incorrect statement of the law, nor does he argue that it was misleading. Ehrhardt argues only that Glaze's qualifications as an expert were not properly developed at trial and that Glaze was not qualified to render an opinion on the value of the items. Thus, while Ehrhardt's argument is framed as an objection to the jury instruction, his argument relates only to the admissibility of Glaze's testimony.

¶18 Failure to object to the admissibility of evidence at trial precludes appellate review unless the error is a manifest error affecting a constitutional right. *State v. Florczak*, 76 Wn. App. 55, 72, 882 P.2d 199 (1994). And Ehrhardt does not argue that admission of Glaze's testimony is manifest error affecting a constitutional right. Ehrhardt failed to preserve for review the question of the admissibility of Glaze's testimony by failing to object at trial. We do not consider his argument on this point.

---

[5] WPIC 6.51 provides, "A witness who has special training, education, or experience may be allowed to express an opinion in addition to giving testimony as to facts." It further provides that the jury is not required to accept such a witness's opinion but should instead consider factors relating to the weight and credibility of the testimony.

### III. Opportunity for Voir Dire

¶19 Ehrhardt next argues that he was denied an opportunity to voir dire Glaze as to his expert qualifications. We disagree.

¶20 Ehrhardt's argument relies on *City of Bellevue v. Lightfoot*, 75 Wn. App. 214, 877 P.2d 247 (1994). There, Lightfoot obtained the trial court's permission to voir dire a radar equipment expert as to his qualifications. 75 Wn. App. at 216. Prior to conducting voir dire however, Lightfoot sought to question the expert about the scope of his expertise, attempting to show that the expert had no experience or training in the field of engineering. 75 Wn. App. at 217. The City objected to Lightfoot's questioning. 75 Wn. App. at 217. The trial court sustained the objection and did not permit Lightfoot to conduct any voir dire examination of the expert. 75 Wn. App. at 217.

¶21 Division One of this court noted that although engineering questions are not relevant to the accuracy of a radar device, the trial court erred by not permitting Lightfoot to voir dire the expert at all. 75 Wn. App. at 223. The court thus reversed and remanded for a new trial. 75 Wn. App. at 223.

¶22 Ehrhardt urges us to reverse his convictions because "his attorney had no opportunity to voir dire or cross examine the victim Mr. Glaze about his qualifications as an expert to testify about the value of the various items." Br. of Appellant at 16. This is incorrect. The trial court did not deny Ehrhardt the opportunity to voir dire or cross examine Glaze about his qualifications. Ehrhardt never sought to do either, making *Lightfoot* distinguishable. And Ehrhardt cites no law requiring a trial court to sua sponte prompt defense counsel to examine an opposing expert as to his qualifications. Ehrhardt's claim on this point therefore fails.

## IV. Sufficiency of Evidence

¶23 Ehrhardt finally argues that the evidence was insufficient to convict him of second degree burglary and second degree theft. We disagree as to the burglary conviction but agree as to the theft conviction.

¶24 In evaluating the sufficiency of the evidence, we review the evidence in the light most favorable to the State. *State v. Drum*, 168 Wn.2d 23, 34, 225 P.3d 237 (2010). "The relevant question is 'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *Drum*, 168 Wn.2d at 34-35 (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). A claim of insufficient evidence admits the truth of the State's evidence and all reasonable inferences therefrom. *Drum*, 168 Wn.2d at 35.

### A. *Burglary*

¶25 Ehrhardt first argues that the evidence was insufficient to convict him of second degree burglary because no witness saw him enter any structure on Glaze's property. We disagree.

¶26 We deem circumstantial evidence equally as reliable as direct evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010) (quoting *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)). The lack of direct evidence alone does not warrant reversal of Ehrhardt's conviction. *See State v. Walters*, 56 Wn.2d 79, 85, 351 P.2d 147 (1960) (lack of direct evidence not fatal to State's burglary case). Moreover, under *Mace*, the evidence is sufficient to show burglary where the defendant possessed recently stolen property and there is slight corroborative evidence of inculpatory circumstances, such as the defendant's presence near the scene of the crime. 97 Wn.2d at 843. The State presented undisputed evidence that Ehrhardt was present near the scene of the crime, he was later

discovered with a gas can recently stolen from Glaze's property, and items from Glaze's shed had been removed from the shed and piled nearby. This was sufficient evidence to convict Ehrhardt of second degree burglary.

## B. *Theft*

¶27 Ehrhardt also argues that the evidence was insufficient to convict him of second degree theft because the State failed to prove that the items over which Ehrhardt exerted unauthorized control had a value of more than $750, an element of second degree theft. RCW 9A.56.040(1)(a). Ehrhardt argues that Glaze's testimony as to the value of the items was not sufficient because Glaze testified only as to their cost. He argues that the State provided insufficient evidence of the condition of the items at that time that would enable the jury to determine their market value. We agree.

¶28 "Value" for the purposes of theft means the market value of the property at the time and in the approximate area of the theft. RCW 9A.56.010(21). Market value is the price that a well-informed buyer would pay to a well-informed seller. *State v. Longshore*, 141 Wn.2d 414, 429, 5 P.3d 1256 (2000) (quoting *State v. Kleist*, 126 Wn.2d 432, 435, 895 P.2d 398 (1995)).

¶29 Evidence of retail price alone may be sufficient to establish value. *Longshore*, 141 Wn.2d at 430. And evidence of the price paid for an item is entitled to great weight. *State v. Hermann*, 138 Wn. App. 596, 602, 158 P.3d 96 (2007). But such evidence must not be too remote in time. *State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970). Also, value need not be proved by direct evidence. *Hermann*, 138 Wn. App. at 602. Rather, the jury may draw reasonable inferences from the evidence, including changes in the condition of the property that affect its value. *Melrose*, 2 Wn. App. at 831. Evidence other than market value, such as replacement cost, is inadmissible unless it is first shown that the property has no market value. *State v. Clark*, 13

Wn. App. 782, 788, 537 P.2d 820 (1975) (quoting 52A C.J.S. *Larceny* § 118, at 618-19 (1968)).

¶30 In *State v. Morley*, the State charged Morley with second degree theft for stealing one generator and with attempted first degree theft for attempting to steal a second, larger generator. 119 Wn. App. 939, 941, 83 P.3d 1023 (2004). The State presented testimony that the smaller generator had a book value of $655.92. 119 Wn. App. at 941. The book value reflected the generator's depreciated value. 119 Wn. App. at 941. The State also presented testimony that the larger generator would have cost $2,000.00 new. 119 Wn. App. at 942. However, the larger generator's owner had purchased it for a substantial discount, and it was a used item when Morley attempted to steal it. 119 Wn. App. at 944. The State presented no direct evidence of the larger generator's market value as a used piece of equipment. 119 Wn. App. at 944.

¶31 The *Morley* court held, "At most, the evidence creates an inference that [the larger generator's] value exceeded the depreciated value of the first, smaller generator." 119 Wn. App. at 944. But the court held that there was insufficient evidence to prove that the larger generator was worth more than $1,500, the threshold for first degree theft at the time. Former RCW 9A.56.030 (1995); 119 Wn. App. at 944-45.

¶32 Here, Glaze testified that the air compressor and pressure washer were essentially new, enabling the jury to find that their original cost was their current market value. And Glaze testified that the items in the stereo wiring box were worth $100 at that time because there were only "bits and parts and pieces" left. RP at 84. This was testimony about the contemporaneous value of the items, and was sufficient for the jury to find their market value.

¶33 However, Glaze did not testify about the condition of the rotary hammers and nail guns. Glaze's testimony suggested that all of these tools had been used for professional construction for approximately three years. And Glaze

testified only as to what the tools "cost," not what they were then worth in their used condition.

¶34 Analogous to *Morley*, the State presented no direct evidence and insufficient circumstantial evidence of the condition or depreciation of the tools from which the jury could infer their market value. Nor did the State present evidence that the tools had no market value, which would have permitted the State to rely on evidence of their replacement cost.

¶35 The pressure washer, air compressor, and stereo wiring were worth $399 altogether. But there was insufficient evidence whether the rotary hammers and nail guns were worth more than $351, the amount necessary to reach the $750 threshold for second degree theft under RCW 9A.56.040(1)(a). Thus, there was insufficient evidence to show that the property over which Ehrhardt exerted unauthorized control had a market value greater than $750 as RCW 9A.56.040(1)(a) and .010(21) require. We therefore reverse Ehrhardt's second degree theft conviction and remand for the charge to be dismissed with prejudice.

¶36 Before concluding, we respond to some of the arguments made by the dissent. We respectfully disagree with the dissent that the *Morley* court held that the value of the generator at issue "could be ascertained after accounting for depreciation." Dissent at 949. The *Morley* court held that the evidence permitted "[a]t most" an inference that the larger generator was worth more than *the depreciated value of the smaller generator*. 119 Wn. App. at 944. The depreciated value of the smaller generator did not account for the depreciation of the larger generator; the inference that the larger generator was worth more in no way accounted for the larger generator's depreciation.

¶37 We also respectfully disagree that this case is more analogous to *Melrose*, 2 Wn. App. 824. In *Melrose*, the State presented the testimony of a stolen camera's owner, who testified that the camera cost $320. 2 Wn. App. at 826, 830. While the camera's owner did not know the camera's

market value, he testified that the price of a camera " 'drops rapidly.' " 2 Wn. App. at 830. The State also presented testimony that the camera's viewfinder was dirty and it had " 'specks of dirt and hair in the top of it.' " 2 Wn. App. at 830. The *Melrose* court concluded that this evidence of market value, although "sparse," was sufficient for the jury to infer market value "using the judgment of persons of ordinary experience and knowledge." 2 Wn. App. at 832.

¶38 Here, in contrast, the evidence of the tools' market value was not even "sparse." While in *Melrose* the camera's owner testified about the camera's market value, here Glaze was not the owner of the tools at issue. The jury thus had testimony from a nonowner about the tools' original cost and their age, and photographs showing them from one angle. There was no testimony, as there was in *Melrose*, as to how fast the price of a rotary hammer or nail gun drops. Nor did the photographs of the tools provide substantial evidence of their condition—the jury could not have used its "ordinary experience and knowledge" to infer from the photographs whether the tools even worked, let alone what effect their condition had on their market value.

¶39 We accordingly hold that *Morley*, not *Melrose*, is analogous to the instant case.

¶40 Affirmed in part, reversed in part, and remanded.

VAN DEREN, J., concurs.

¶41 QUINN-BRINTNALL, J. (dissenting) — Because I believe sufficient evidence supported the jury's finding that Joseph Ehrhardt committed second degree theft in violation of RCW 9A.56.040(1)(a), I respectfully dissent.

¶42 Here, the State charged Ehrhardt with second degree theft. RCW 9A.56.040(1)(a). Brian Glaze, the victim of the theft, testified as to the market value of an air compressor ($100), a pressure washer ($199), and stereo equipment (approximately $100), and the purchase cost of a rotary

hammer ($450) and two nail guns ($230 each). In addition, the State showed Glaze photographs of the items and he confirmed the identity and condition of each item. These photographs were entered as exhibits and the jury was able to view them during deliberations. Glaze also testified that the items were about three years old. In light of this testimony and evidence, I would defer to the jury's determination that the cumulative value of the items stolen by Ehrhardt met the statutorily required threshold of $750 for a second degree theft conviction. RCW 9A.56.040(1)(a).

¶43 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the jury's verdict, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Notaro*, 161 Wn. App. 654, 670-71, 255 P.3d 774 (2011). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

¶44 To convict Ehrhardt of second degree theft, the State needed to prove that he exerted unauthorized control over items valued at more than $750. RCW 9A.56.040(1)(a). "Value" for the purposes of theft means the market value of the property at the time and in the approximate area of the theft. Former RCW 9A.56.010(18) (2006). " 'Market value' is . . . the price which a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into the transaction." *State v. Clark*, 13 Wn. App. 782, 787, 537 P.2d 820 (1975). "In determining the value of an item, evidence of price paid is entitled to great weight." *State v. Hermann*, 138 Wn. App. 596, 602, 158 P.3d 96 (2007). "Evidence of retail price *alone* may be sufficient to establish value." *State v. Longshore*, 141 Wn.2d 414, 430, 5 P.3d 1256 (2000) (citing *State v. Kleist*, 126 Wn.2d 432, 436, 895 P.2d 398 (1995)).

¶45 The value of the air compressor, pressure washer, and stereo equipment are not at issue ($399). Thus, to convict

Ehrhardt, the jury needed to determine that the stolen rotary hammer and two nail guns had a present market value of at least $351. But because Glaze did not own these items and testified only to the price his employer paid for these tools, not their present market value, the majority concludes, as a matter of law, that no reasonable juror could infer their market value. Although these items may not be worth their purchase price of $910, it is counter intuitive to permit them no value whatsoever or to discount Glaze's testimony because Glaze's employer had purchased the hammer and nail guns. Any reasonable juror could find that goods purchased for $910 would have a value of at least $351 only three years after purchase. Moreover, greater weight should be given to a jury's determination that this element of the crime was satisfied. *Camarillo*, 115 Wn.2d at 71.

¶46 The majority relies on *State v. Morley*, 119 Wn. App. 939, 83 P.3d 1023 (2004), to hold there was not substantial evidence to support the jury's market value determination. But *Morley* involved the theft of a used generator that the owner, an equipment rental company, had purchased at less than retail price and rented to customers. 119 Wn. App. at 943. Although Division Three of this court held that in *Morley*, the purchase price could not be used because the generator was purchased at less than retail cost—making the purchase price uncertain—the court acknowledged that "the evidence creates an inference that its value exceeded the depreciated value of the first, smaller generator, which Mr. Fleury testified was $665.92." 119 Wn. App. at 944. Thus, despite a lack of testimony regarding the generator's age and exact purchase price, the *Morley* court reasoned that evidence of purchase price created an inference that the value of the generator could be ascertained after accounting for depreciation.

¶47 In contrast to *Morley*, the evidence here established the age of the tools in question while photographic evidence reflected the condition of the tools. In addition, while the

owner of the generator in *Morley* did not know how much he had paid for the generator, only that he had paid less than retail price, the victim in this case testified to the purchase price of the hammer and nail guns when new. 119 Wn. App. at 943.

¶48 This case is more analogous to *State v. Melrose*, 2 Wn. App. 824, 830, 470 P.2d 552 (1970), in which the owner of a stolen camera testified as to its purchase price several years prior, but said that "[h]e didn't know 'what the camera might be worth today.' " The owner also admitted the " 'price of cameras drops rapidly.' " *Melrose*, 2 Wn. App. at 830. Division One of this court determined that direct evidence of value is a fact from which a jury may draw reasonable inferences and do "some conjecturing" based on substantial evidence "using the judgment of persons of ordinary experience and knowledge." *Melrose*, 2 Wn. App. at 831-32. Thus, the *Melrose* court determined that even though the value evidence of the camera was sparse, it was nevertheless sufficient to show the items had a market value sufficient to prove the elements of grand larceny as charged.

¶49 Here, Glaze testified as to the purchase price and age of the nail guns and hammer. Because the nail guns and hammer were only three years old, the purchase price in this case gave the jury a price from which to infer the market value of the tools. The majority argues that Glaze did not testify about the condition of the tools but the jury in this case had photographs of the items in question from which to infer the condition. Using the purchase price provided by Glaze's testimony as a baseline and the photographs of the items to determine condition, the jury had sufficient evidence to determine the threshold value required for second degree theft under the statute.

¶50 Because the jury heard testimony as to the approximate value of the rotary hammer and nail guns at the time of purchase ($910), when combined with the market value of the remaining stolen items ($399), this court should hold

that the jury, "using the judgment of persons of ordinary experience and knowledge," properly inferred the approximate value of all items stolen to be over $750 at the time of the theft. *Melrose*, 2 Wn. App. at 832. Accordingly, I respectfully dissent.