IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36383-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WENDY LIMON AMEZCUA, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Wendy Amezcua Limon[1] appeals her convictions for residential

burglary, malicious mischief, theft, and violation of a no-contact order. We affirm in part,

reverse in part, and remand for imposition of a lesser offense and resentencing.

BACKGROUND

Ms. Amezcua Limon and Noah Balauro lived together for about five years in

a home owned by Mr. Balauro's parents in Omak, Washington. Mr. Balauro was

---

[1] During the trial court proceedings, the defendant clarified that her surname is
Amezcua Limon. We refer to her as such in this opinion.

responsible for household income while Ms. Amezcua Limon largely stayed home to care for the couple's three children.[2]

The relationship between Ms. Amezcua Limon and Mr. Balauro was turbulent. It ended when Mr. Balauro was arrested on a domestic violence charge and subjected to a protection order. Ms. Amezcua Limon moved out of Mr. Balauro's home after his arrest. Nevertheless, she continued to frequent Mr. Balauro's residence (despite the protection order) for purposes of facilitating childcare. Ms. Amezcua Limon also stored many of her personal belongings at the residence.

After Ms. Amezcua Limon and Mr. Balauro separated, Mr. Balauro began dating a woman named Mitzy Lopez Orta. Ms. Lopez Orta lived in Seattle and stayed with Mr. Balauro on weekends. Ms. Amezcua Limon did not want Ms. Lopez Orta to spend time with her children. She also did not want Mr. Balauro or Ms. Lopez Orta to use Ms. Amezcua Limon's bed, which remained at Mr. Balauro's residence. In order to comply with at least some of Ms. Amezcua Limon's wishes, Ms. Lopez Orta replaced Ms. Amezcua Limon's mattress with her own.

---

[2] Only the youngest child was fathered by Mr. Balauro. However, Mr. Balauro assumed parenting responsibilities for all three children.

Ms. Lopez Orta was visiting Mr. Balauro's residence on March 3, 2018. That day, Ms. Amezcua Limon arrived early to drop off her children. On arrival, she was upset to find Ms. Lopez Orta at the residence. An argument ensued and the police were called. Ms. Amezcua Limon eventually left the residence after being directed to do so by the police. When Ms. Amezcua Limon came to the residence later that day to pick up her children, there was another dispute and the police intervened a second time. Again, Ms. Amezcua Limon was directed to leave.

After Ms. Amezcua Limon left with the children, Mr. Balauro and Ms. Lopez Orta went out for dinner. They took Ms. Lopez Orta's car because Mr. Balauro could not find his keys. When the couple returned home, they found the house had been ransacked. Several items were stolen and others were damaged. The stolen property was eventually recovered. Some of the stolen items belonged to Mr. Balauro; others to Ms. Lopez Orta. The damaged property included electronic equipment, furniture, and Ms. Lopez Orta's mattress.

Ms. Amezcua Limon was arrested and advised of her rights. She told the police she entered Mr. Balauro's house using his key. She also stated she had been responsible for damaging items inside the house and stealing several pieces of property.

The State charged Ms. Amezcua Limon with several offenses relating to her activities at Mr. Balauro's residence. The trial court issued a domestic violence protection no-contact order, prohibiting Ms. Amezcua Limon from contacting Mr. Balauro. While the order prohibited actual contact, it did not mention attempted contact.[3]

Ms. Amezcua Limon was held in custody pending trial. During her detention, she made numerous phone calls, all of which were recorded. Some of Ms. Amezcua Limon's calls were to a woman believed to be Ms. Amezcua Limon's sister. During the calls, Ms. Amezcua Limon asked her sister to text and talk to Mr. Balauro. The sister responded she would make contact; however, there was never any confirmation that contact occurred.

---

[3] The order stated:

> A. do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person.
> B. do not contact the protected person, directly, indirectly, in person or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by [your] lawyers.
> C. do not knowingly enter, remain, or come within <u>300 feet</u> (1,000 feet if no distance entered) of the protected person's residence, school, workplace . . . .

Ex. 52.

4

After learning of Ms. Amezcua Limon's phone calls, the State amended the information to include a charge of a no-contact order violation. Ultimately, Ms. Amezcua Limon was charged with: (1) residential burglary, (2) first degree malicious mischief (damage in amount exceeding $5,000) regarding property "belonging to or controlled by" Mr. Balauro, (3) second degree theft (value exceeding $750 but less than $5,000) regarding property stolen from Mr. Balauro and Ms. Lopez Orta, (4) misdemeanor taking a pet, and (5) violation of a protection order. Clerk's Papers (CP) at 12-14.

Ms. Amezcua Limon exercised her right to a jury trial. At trial, Mr. Balauro described the property stolen from his residence along with the damaged items. He estimated the market value for the stolen property, but largely limited his discussion of the damaged property to its value when new. Ms. Lopez Orta testified about the stolen and damaged items that belonged to her. She discussed the value of the property as new, but not market value.

None of the witnesses at trial discussed whether anyone made contact with Mr. Balauro in violation of the trial court's domestic violence protection order. The State did not call Ms. Amezcua Limon's sister as a witness and Mr. Balauro was not asked any questions on this topic. The State's proof regarding violation of the protection order was limited to the audio recordings of Ms. Amezcua Limon's jail calls.

5

The jury was provided a full panoply of lesser included offense instructions for

malicious mischief and theft. It entered guilty verdicts for residential burglary, the lesser

included offense of second degree malicious mischief (damage exceeding $750 but less

than $5,000), the original charge of second degree theft, and violation of a domestic

violence protection order. Ms. Amezcua Limon was acquitted of unlawfully taking a pet.

Ms. Amezcua Limon appeals.

## ANALYSIS

Ms. Amezcua Limon challenges the sufficiency of the State's evidence as to each

of her four counts of conviction. She claims the evidence was insufficient to warrant

convictions for burglary and the protection order violation. Regarding malicious mischief

and theft, Ms. Amezcua Limon argues the State's evidence was insufficient to prove the

amount of value necessary to elevate the degree of offense.[4]

In addition to her sufficiency arguments, Ms. Amezcua Limon claims there was

an improper variance between the charge of malicious mischief and the court's trial

---

[4] The standard of review applicable to a sufficiency challenge requires that we view "the evidence in the light most favorable to the State" and asks whether "any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). This standard does not permit our weighing evidence or assessing credibility. Instead, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.*

instruction to the jury.[5]

We discuss each of Ms. Amezcua Limon's challenges according to the counts of conviction.

*Count 1—residential burglary*

Ms. Amezcua Limon claims the State presented insufficient evidence to justify her conviction for residential burglary. She argues she had an implied license to access Mr. Balauro's home. As such, she claims the State failed to prove she entered or remained unlawfully, as required by RCW 9A.52.025(1).

Trial evidence does not support Ms. Amezcua Limon's claim of an implied license. At the time of her offense, Ms. Amezcua Limon no longer lived with Mr. Balauro. *Cf. State v. Wilson*, 136 Wn. App. 596, 608-09, 150 P.3d 144 (2007) (evidence insufficient to prove unlawful entry when the defendant lived at the residence at the time of the offense). While Ms. Amezcua Limon at times had permission to be inside the home, that was not true on March 3. In fact, the police were summoned twice that day and each time instructed Ms. Amezcua Limon to leave. The evidence at trial indicated Ms. Amezcua Limon snuck into Mr. Balauro's home using keys that she had secreted

---

[5] The standard of review applicable to Ms. Amezcua Limon's variance challenge is discussed below, along with the merits.

away from him. None of this evidence suggested Ms. Amezcua Limon had permission to enter. The evidence overwhelmingly showed Ms. Amezcua Limon's entrance was unlawful. The jury's guilty verdict was fully justified.

*Count 2—malicious mischief*

Ms. Amezcua Limon raises two challenges to her malicious mischief conviction. First, she claims the court's instructions permitted the jury to convict her of an uncharged offense. Second, she argues the State's evidence was insufficient to establish damages in excess of $750, as required for second degree malicious mischief. We agree with Ms. Amezcua Limon's second argument, but not the first.

*The charged offense*

Ms. Amezcua Limon claims she was deprived of her constitutional right to be tried for a charged offense[6] because her malicious mischief charge differed materially from the court's instructions. Relevant here, the information charged that Ms. Amezcua Limon caused "physical damage . . . to the property of another, to wit: various belongings and real property belonging to or controlled by Noah Balauro." CP at 13. The corresponding instruction required the State to prove Ms. Amezcua Limon "caused physical damage to the property of another . . . to wit: combined value of various items belonging to Noah

---

[6] *See* U.S. CONST. amend VI; WASH. CONST. art. I, § 22.

Balauro and Mitzi Lopez Orta." *Id*. at 74.

Because Ms. Amezcua Limon did not make a variance challenge at the time of trial, our review is governed by RAP 2.5(a), which limits appellate review of unpreserved error to three circumstances: (1) lack of jurisdiction, (2) factual insufficiency, and (3) manifest errors involving constitutional rights.

Although Ms. Amezcua Limon identified a constitutional right as contemplated by RAP 2.5(a)(3), she has failed to demonstrate a manifest violation of this right. *See State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009) (manifest error must be "obvious on the record").[7] The information did not simply allege Ms. Amezcua Limon caused damage to property owned by Mr. Balauro; it also asserted she damaged property *controlled* by him. The only item of Ms. Lopez Orta's that was relevant to the malicious

---

[7] Ms. Amezcua Limon's argument on appeal is complicated by the fact that the crime of malicious mischief is not victim specific; it is property specific. *State v. K.R.*, 169 Wn. App. 742, 747-48, 282 P.3d 1112 (2012). When charging malicious mischief, the State must either specify a separate count for each damaged item or aggregate the damages and allege a common scheme or plan. *Id*.; RCW 9A.48.100(2). Here, the State clearly intended to aggregate several pieces of property into one count. Yet it failed to allege a common plan or scheme. Had the State properly worded the information, it would have been abundantly clear that the malicious mischief count did not turn on whether Mr. Balauro or Ms. Lopez Orta owned the property at issue. Ms. Amezcua Limon's argument on appeal could have been easily avoided. Nevertheless, we do not resolve the case on this basis because Ms. Amezcua Limon has not challenged on appeal the sufficiency of the information.

9

mischief charge was the mattress. The mattress was stored at Mr. Balauro's residence and was apparently used by both Ms. Lopez Orta and Mr. Balauro. Given this state of the evidence, the mattress appeared to be something controlled by Mr. Balauro, even if not owned by him. There was no obvious variance between the language used in the information and the instructions provided the jury. Ms. Amezcua Limon's challenge to the wording of the court's instruction therefore fails.

### *Evidentiary sufficiency*

To prove Ms. Amezcua Limon committed second degree malicious mischief, the State was required to establish she caused "physical damage to the property of another in an amount exceeding" $750. RCW 9A.48.080(1)(a). For purposes of malicious mischief, damages may be assessed according to the "reasonable cost of repairs." *State v. Newcomb*, 160 Wn. App. 184, 192, 246 P.3d 1286 (2011). Alternatively, damages may be calculated according to diminution in value. RCW 9A.48.010(1)(b).[8]

Here, the State failed to present any evidence sufficient to meet the aforementioned definitions of damages. The only evidence of repair costs was a $400 estimate to replace the glass top on a stove. But according to the testimony, this damage

---

[8] The parties focus on the value of the property at issue, instead of the damages. The two concepts are distinct. While the value of property is relevant under the theft statute, malicious mischief focuses on the amount of damage to the property.

predated Ms. Amezcua Limon's offense. Mr. Balauro testified extensively as to what he

originally spent on the property damaged by Ms. Amezcua Limon, but he did not testify

about any diminution in value. In other words, there was no discussion about the fair

market value of the property before and after Ms. Amezcua Limon's offense conduct.

Given this state of the record, the State failed to present sufficient evidence to justify Ms.

Amezcua Limon's conviction for second degree malicious mischief. Instead, the evidence

of Ms. Amezcua Limon's destructive conduct only justified a conviction for third degree

malicious mischief, which does not require a specific damage amount. RCW 9A.48.090.[9]

*Count 3—theft*

To establish second degree theft, the State was required to prove Ms. Amezcua

Limon stole property with a value in excess of $750, but less than $5,000. RCW

9A.56.040(1)(a). In this context, "'[v]alue' means the market value of the property . . .

at the time and in the approximate area of the act." RCW 9A.56.010(21)(a). "'Market

value' is the price which a well-informed buyer would pay to a well-informed seller,

when neither is obliged to enter into the transaction." *State v. Williams*, 199 Wn. App. 99,

---

[9] The trial evidence included photographs of the damaged property. These
photographs have not been made part of the record on review. Even if the record included
photographs, they would not be sufficient to reveal the damage estimates attributable to
Ms. Amezcua Limon's criminal conduct.

11

105, 398 P.3d 1150 (2017). Evidence of retail price is relevant to establishing market value and may sometimes be sufficient to meet the State's burden or proof. *State v. Ehrhardt*, 167 Wn. App. 934, 944, 276 P.3d 332 (2012). But when a purchased piece of property has been subjected to normal use, retail price carries less probative weight. *See State v. Morley*, 119 Wn. App. 939, 944, 83 P.3d 1023 (2004).

Here, the State presented sufficient evidence of market value in excess of $750. Mr. Balauro's testimony regarding the stolen property was very specific as to market value. He claimed the items taken by Ms. Amezcua Limon had a street value of $700.[10] Ms. Lopez Orta also testified about the value of items taken by Ms. Amezcua Limon. She claimed Ms. Amezcua Limon stole clothing, makeup, a hair iron, and a hairdryer. According to Ms. Lopez Orta, the original retail value for these items was over $1,500. Ms. Lopez Orta's estimate did not establish the fair market value of the stolen items. But given that the State only needed to prove more than $50 in losses beyond those described by Mr. Balauro, Ms. Lopez Orta's testimony was sufficient to justify the jury's verdict for second degree theft.

---

[10] $500 for a laptop, $100 for a PlayStation 4, and $100 for a television.

*Count 4—protection order violation*

Ms. Amezcua Limon was charged with violation of a protection order pursuant to

RCW 26.50.110(1). She was not charged with attempt. While Ms. Amezcua Limon's

protection order prohibited indirect contact with Mr. Balauro (i.e., contact through a third

party), it did not prohibit attempted contact. Thus, to prove its case, the State was required

to prove Ms. Amezcua Limon actually contacted Mr. Balauro, either directly or through a

third person. *See State v. Ward*, 148 Wn.2d 803, 815-16, 64 P.3d 640 (2003).

The State fails to provide any meaningful response to Ms. Amezcua Limon's

protection order argument. The entirety of the State's briefing on this issue is as follows:

> A temporary no contact order was issued in this matter on March 12, 2018.
> The Domestic Violence No-Contact Order was delivered to [sic] March 12,
> 2018 and she signed it. At trial, the State demonstrated through jail calls
> that Ms. Amezcua encouraged a female to contact Mr. Balauro in order to
> determine whether he wanted to continue on with criminal charges or
> whether he would appear at trial. [RP 311-317]. This allowed the jury to
> conclude that the [sic] Ms. Amezcua violated the No Contact Order.

Br. of Resp't at 12-13.

We agree with Ms. Amezcua Limon that the trial evidence fails to show an actual

violation of the protection order, as opposed to merely an attempt. While the evidence

indicates Ms. Amezcua Limon wanted her sister to contact Mr. Balauro and relay certain

messages, there is no evidence that the sister actually followed through on these requests.

13

The State's evidence was simply insufficient to show actual contact in violation of the protection order, even under the generous standard of review applicable in this context.

Ms. Amezcua Limon's conviction for violation of the protection order must be reversed with prejudice.

## CONCLUSION

Ms. Amezcua Limon's convictions for residential burglary and second degree theft are affirmed. The conviction for second degree malicious mischief is reversed with instructions that judgment instead be issued for the lesser offense of third degree malicious mischief. The conviction for violation of a protection order is reversed with prejudice. This matter is remanded for correction of the judgment and sentence and for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

14